**In re Erik Stephen BROUS a/k/a Erik Brous, Debtor.**

**No. 05–47655 (SMB).**

United States Bankruptcy Court, S.D. New York.

June 12, 2007.

564

Kittay & Gershfield, P.C., of counsel,
David R. Kittay, Esq., Robin Meyer Ko-

nigsberg, Esq., Tarrytown, NY, for Trustee & Applicant Pro Se.

Gusrae, Kaplan, Bruno & Nusbaum PLLC, of counsel, David A. Gehn, Esq., New York, NY, for Special Arbitration Counsel to the Trustee.

Kramer Levin Naftalis & Frankel LLP, of counsel, P. Bradley O'Neill, Esq., New York, NY, for Bear, Stearns & Co., Inc.

Diana G. Adams, of counsel, Andrew Velez–Rivera, Esq., New York, NY, for Acting United States Trustee.

## MEMORANDUM DECISION REGARDING REQUESTS FOR FINAL COMPENSATION AND REIMBURSEMENT OF EXPENSES

STUART M. BERNSTEIN, Chief Bankruptcy Judge.

Three fee applicants seek final compensation in this chapter 7 case. They include (1) David L. Kittay, the chapter 7 Trustee, (2) Kittay & Gershfeld, P.C. (the "Kittay Firm"), the Trustee's general counsel, and (3) Gusrae, Kaplan, Bruno & Nusbaum PLLC ("Special Arbitration Counsel"), the Trustee's special litigation counsel. Bear, Stearns & Co., Inc. ("Bear Stearns"), the main creditor, filed an objection to each application. (*See Bear Stearns' Objection to the Final Fee Applications of (i) David R. Kittay, Chapter 7 Trustee; (ii) Kittay & Gershfeld, P.C.; and (iii) Gusrae, Kaplan, Bruno & Nusbaum PLLC* dated March 20, 2007 ("Objection")(ECF Doc. # 56.))

1. The filing occurred two days before the Bankruptcy Abuse Prevention & Consumer Protection Act became fully effective. The statutory references refer to the statute in effect on the filing date.

2. According to Schedule D, the secured debt consisted of a home equity line of credit ($225,000) and a mortgage on the Apartment ($707,487.61). Both loans were held by affili-

The principal legal issue concerns the proper method of computing the Trustee's commission. The Trustee seeks the maximum commission allowable under 11 U.S.C. § 326, which is based upon the amounts that have been disbursed in the case. The Court concludes, however, that the use of § 326 is not appropriate, except as a limit, and that the Trustee, like other professionals, must generally establish his right to compensation under the "lodestar" method incorporated into 11 U.S.C § 330.

## BACKGROUND

The debtor filed this chapter 7 case on October 15, 2005.[1] His schedules identified three main assets that the Trustee would have to administer. First, the debtor owned a condominium apartment located at 530 East 76th Street (the "Apartment"). He valued the Apartment at $1.1 million, and indicated that it was encumbered by a mortgage in the sum of $932,487.61.[2] Second, he asserted a right to $86,000 in the possession of Bear Stearns, his former employer, but Bear Stearns disputed his claim. Third, he listed an unliquidated claim against Bear Stearns arising from the termination of his employment. This last matter, and a Bear Stearns counterclaim in excess of $2 million, were the subject of an arbitration pending before the National Association of Securities Dealers, Inc. ("NASD").[3]

### A. The Apartment

Although the debtor had valued the Apartment at $1.1 million, G.E.M. Auction

ates of GMAC, and are collectively referred to as the "mortgage".

3. The debtor also scheduled a another pending arbitration, involving an unliquidated claim, against Lehman Brothers. The Trustee did not administer this property, and eventually abandoned it.

Corp. ("GEM"), the Trustee's real estate broker, thought it was worth between $1.45 million and $1.55 million. GMAC, however, became a thorn in the Trustee's side. Shortly after the commencement of the case, it filed a motion for relief from the automatic stay to foreclose its lien. The Trustee and GMAC explored the mutually beneficial alternative of a bankruptcy sale, and GMAC withdrew its motion. GMAC refused, however, despite the Trustee's urging, to "carve out" any amount from its share of the proceeds to cover the estate's administrative costs or create a fund for unsecured creditors.

Given the amount of equity, a sale still made sense even without the "carve out." The Trustee marketed the Apartment through GEM, and procured a buyer who agreed to pay $1.4 million. The sale was subject to higher and better offers, and a bankruptcy auction ensued. Another person bid $1.47 million and won the auction. According to the Trustee, GMAC failed or refused to promptly provide a "pay-off" letter, delaying if not threatening the closing. The Trustee filed an application to fix the amount of GMAC's lien, but after GMAC produced a "pay-off" letter, the Trustee withdrew his application.

The sale of the Apartment closed on or about July 16, 2006. The Trustee's Final Report (Exhibit C) does not reflect the receipt of $1.47 million. Instead, it appears that the buyer paid GMAC (or North Fork)[4] $997,092.22 at the closing to satisfy the two mortgages. (*Trustee's Response*, at ¶ 16 n. 3.) It also appears that the buyer paid accrued condominium charges totaling $39,769.71. (*Id.*) After deducting the secured debt, the sale netted $433,138.07. The Trustee also paid the debtor his $50,000 homestead exemption. Thus, the actual benefit to the unsecured creditors was approximately $383,000, and this was before payment of GEM's real estate commission of $88,200.

## B. Bear Stearns

At the time that the debtor was discharged from employment with Bear Stearns, he owed the firm approximately $2,250,000 on account of an unpaid loan. The debtor maintained a brokerage account with Bear Stearns, worth about $86,000, but Bear Stearns contended that these funds secured the unpaid debt. Prior to the bankruptcy, the debtor had commenced an arbitration against Bear Stearns for improperly discharging him and using improper language in the debtor's Form U–5.[5] Bear Stearns counterclaimed to recover the unpaid loan.

The Trustee investigated the claims, and as a result of that investigation, retained Special Arbitration Counsel, the debtor's pre-petition lawyer, to prosecute the arbitration and defend against the counterclaim.[6] Following discovery and just three

---

4. North Fork Bank apparently succeeded to GMAC's rights. (*See Trustee's Response To Bear Stearns' Objection to the Final Fee Applications of (i) David R. Kittay, Chapter 7 Trustee; (ii) Kittay & Gershfeld, P.C.; and (iii) Gusrae, Kaplan, Bruno & Nusbaum PLLC,* dated Apr. 6, 2007, at ¶ 16 n. 3)("*Trustee's Response*")(ECF Doc. # 60.)

5. The information regarding the arbitration was culled from the Trustee's application to retain Special Counsel. (*See Application for Authority to Retain Gusrae, Kaplan, Bruno & Nusbaum PLLC as Special Counsel to the Trustee Effective February 23, 2006,* dated Feb. 28, 2006 (ECF Doc. # 22).)

6. The debtor had filed an earlier chapter 11 that was dismissed by order dated October 6, 2005. (*See Order Dismissing Chapter 11 Case,* dated Oct. 6, 2005)(ECF Doc. # 108, filed in Case No. 04–13687.) The dismissal order provided that in the event that the debtor filed another bankruptcy case, the automatic stay would not apply to the counterclaim asserted in the arbitration. The debtor filed this chapter 7 case nine days later.

weeks before trial, Bear Stearns made a settlement proposal. It offered to reduce its secured claim by 33% to $1,577,133.30, and keep the funds in the brokerage account. The Trustee accepted the offer because he thought that the debtor was likely to lose the arbitration, and the settlement would reduce Bear Stearns' share of the unsecured debt from 85% to 78%. The Court "so ordered" the *Stipulation and Order Between Bear, Stearns & Co., Inc. and Chapter 7 Trustee* on September 22, 2006. (*See* ECF Doc. # 44.)

### C. The Trustee's Other Duties

In addition to the foregoing, the Trustee conducted an investigation relating to discrepancies in the debtor's disclosures. The debtor had earned over $500,000 each year for the prior seven years, and had earned over $1 million per year for two of those years. The Trustee applied for the right to conduct an examination of the debtor pursuant to Federal Bankruptcy Rule 2004, and the debtor opposed the application. As a result of litigation over the proposed order the Trustee was able to obtain the documents he needed, he concluded that the debtor had not concealed assets, and he decided not to object to the debtor's discharge.

The Trustee also reviewed several claims. The debtor's ex-spouse filed a priority claim in the amount of $113,645. The Trustee examined the claim, and determined not to object to it. In addition, the Trustee also convinced three creditors who had filed claims after the bar date to voluntarily subordinate those claims, the result mandated by 11 U.S.C. § 726(a)(3).

### D. The Fee Applications

According to the Trustee's Final Report the net cash available for distribution is $392,139.51. The Court received six applications for compensation that are summarized in the following table:

| Applicant | Compensation Requested | Expenses | Hours |
|---|---|---|---|
| David R. Kittay<br>Chapter 7 Trustee | 64,415.21 | | 13.4 |
| Kittay & Gershfeld, P.C.<br>Attorney for the Chapter 7 Trustee | 70,746.75 | 1,284.83 | 212.95 |
| G.E.M. Auction Corp.<br>Real Estate Broker for Chapter 7 Trustee | 88,200.00 | 0 | |
| Gusrae, Kaplan, Bruno & Nussbaum PLLC<br>Special Arbitration Counsel for the Chapter 7 Trustee | 13,097.50 | 165.90 | 53.70 |
| Kavanaugh Maloney & Osnato, LLP<br>Special Real Estate Counsel for Chapter 7 Trustee | 10,156.25 | 476.75 | 31.25 |
| Gary R. Lampert<br>Accountant for the Chapter 7 Trustee | 9,758.00 | 0 | 32.20 |
| **Totals** | **256,373.71** | **1,927.48** | |

If all of the requested fees and expenses are allowed and paid, $133,838.32 will remain available for distribution. Priority claims total $113,645, leaving approximately $20,000 to distribute to $2 million of unsecured debt, or an approximate dividend of only 1%.

As noted, Bear Stearns objected to three of the fee applications, and the other three have been allowed and paid. Bear Stearns contends that the Trustee failed to sustain his burden of proof. He applied for the statutory maximum fee, but did not prove the reasonableness of the fee. Bear Stearns also objected, in part, under the mistaken belief that the Trustee had not submitted any time records. While the Trustee did submit time records, the error does not affect the objection. The Trustee (and other lawyers and paralegals at his firm) only recorded $4,135.50 in billable time devoted to Trustee duties. The billing records do not, therefore, support an application for over $64,000.

Turning its attention to the Kittay Firm, Bear Stearns argued that the work billed on the arbitration provided little benefit to the estate. In addition, too many lawyers at the firm participated in internal meetings, and their arbitration-related work duplicated the services of Special Arbitration Counsel. In a similar vein, Bear Stearns claimed that too many lawyers participated in meetings relating to the real estate-related matters, and the Kittay Firm duplicated the services provided by Kavanaugh Maloney & Osnato, LLP ("Special Real Estate Counsel"). Bear Stearns also complained that the Trustee and other professionals sometimes performed trustee work that they billed as legal services.

Finally, Bear Stearns objected to the fees sought by Special Arbitration Counsel. These fees were out of proportion to any benefit that the services conferred on the estate. Furthermore, Special Arbitration Counsel requested a fee of $350 for services rendered on January 20, 2006, prior to its retention.

## DISCUSSION

### A. The Trustee's Commission

#### 1. Introduction

Two provisions of the Bankruptcy Code affect the Trustee's compensation. First, 11 U.S.C. § 326(a) fixes the Trustee's *maximum* compensation, according to a sliding scale, based upon "moneys disbursed or turned over." The subparagraph states:

In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

The Trustee computed his maximum commission, based on § 326(a), in the sum of $64,432.11, but he is seeking $64,415.21.

■ By its terms, § 326(a) sets a maximum limit, but does not create right to or standard for awarding compensation. *United States Trustee v. Cain (In re Lan Assocs. XI, L.P.)*, 192 F.3d 109, 115–16 (3d Cir.1999); *see Connolly v. Harris Trust Co. of California (In re MiniScribe Corp.)*, 309 F.3d 1234, 1241 (10th Cir.2002). Instead, it permits the Court to allow "reasonable compensation under section 330," the same provision that governs the compensation of attorneys and other professionals. Accordingly, the court must begin by assessing the reasonableness of the trustee's compensation under § 330 before

applying the § 326(a) cap. *In re MiniScribe*, 309 F.3d at 1241; *In re Ohio Industries, Inc.*, 299 B.R. 853, 857 (Bankr. N.D.Ohio 2003); *In re Butts*, 281 B.R. 176, 179 (Bankr.W.D.N.Y.2002).

Bankruptcy Code § 330 authorizes the court to award reasonable compensation to the applicant based on the actual, necessary services, and to reimburse him for his actual, necessary expenses. 11 U.S.C. § 330(a)(1). Section 330(a)(3)(A) establishes the relevant criteria:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.[7]

■ The fee applicant bears the burden of proof on his claim for compensation.

*Howard & Zukin Capital v. High River Ltd. P'ship*, No. 05 Civ. 5726(BSJ), 369 B.R. 111, 113, 2007 WL 1217268, at *2 (S.D.N.Y. Apr.24, 2007); *Zeisler & Zeisler, P.C. v. Prudential Ins. Co. of Am. (In re JLM, Inc.)*, 210 B.R. 19, 24 (2d Cir. BAP1997); *In re Keene Corp.*, 205 B.R. 690, 695 (Bankr.S.D.N.Y.1997). Even in the absence of an objection, the Court has an independent duty to scrutinize the fee request. *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 841 (3d Cir.1994). The applicant must submit contemporaneous time records, although a computerized printout summary, in lieu of the original time slips, will suffice. *Masterwear Corp. v. Angel & Frankel, P.C. (In re Masterwear Corp.)*, 233 B.R. 266, 278 & n. 14 (Bankr.S.D.N.Y.1999). The standards for time records are contained in this Court's Fee Guidelines, as amended, and the guidelines issued by the Executive Office of United States Trustees. *See* 28 C.F.R., pt. 58, App. A (2007) ("UST Guidelines").[8]

■ Generally, fee applications, standing alone, must contain sufficient detail to demonstrate compliance with § 330. UST Guidelines, (b). Any uncertainties due to poor record keeping are resolved against the applicant. *In re Poseidon Pools of America*, 216 B.R. 98, 100–101 (E.D.N.Y. 1997). Time records must be broken down by project. *Id.*, (b)(4)(i). Entries concerning communications (*e.g.*, telephone calls, letters) should identify the parties and the nature of the communication. *Id.*, (b)(4)(v). Entries relating to conferences or hearings should identify the subject of the

---

**7.** The criteria are also stated in the negative. The Code expressly proscribes compensation for services that are unnecessarily duplicative, not reasonably likely to benefit the estate or unnecessary for the administration of the case. 11 U.S.C. § 330(a)(4)(A).

**8.** The Court's Administrative Order (re: Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases), dated April 19, 1995, at ¶ A, implicitly adopted the UST Guidelines for all fee applications filed on or after May 1, 1995 in post–1994 Reform Act cases.

hearing, and explain, where appropriate, why more than one professional from the applicant participated. *Id.* Finally, multiple project services rendered on the same day should be listed in separate entries unless the aggregate daily time does not exceed one half hour. *Id.* Alternatively, and consistent with the practice followed here prior to the adoption of the UST Guidelines, the applicant may "lump" his daily project entries provided he indicates parenthetically the amount of time spent on each activity.

■ It must be borne in mind that a Court does not determine "reasonableness" through hindsight. 3 ALAN N. RESNICK, HENRY J. SOMMER, COLLIER ON BANKRUPTCY 330.04[1][b][iii], at 330–31, (15th ed. rev.2007). A decision reasonable at first may turn out wrong in the end. The test is an objective one, and considers "what services a reasonable lawyer or legal firm would have performed in the same circumstances." *In re Ames Dep't Stores, Inc.,* 76 F.3d 66, 72 (2d Cir.1996) (citing *In re Taxman Clothing Co.,* 49 F.3d 310, 315 (7th Cir.1995) (Posner, C.J.)); *accord In re Angelika Films 57th, Inc.,* 227 B.R. 29, 42 (Bankr.S.D.N.Y.1998); *In re Keene Corp.,* 205 B.R. at 696; *In re Drexel Burnham Lambert Group, Inc.,* 133 B.R. 13, 23 (Bankr.S.D.N.Y.1991).

### 2. The "Lodestar" Approach

■ The customary way to determine a reasonable fee is to begin with the "lodestar" test, and then decide whether to apply any appropriate enhancements under *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–720 (5th Cir.1974). *In re MiniScribe,* 309 F.3d at 1243. The "lodestar" approach involves multiplying the reasonable billing rate by the reasonable number of hours expended. *See Blum v. Stenson,* 465 U.S. 886, 898–901, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

The "lodestar" includes "most, if not all" of the factors relevant to determining a reasonable fee. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 566, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986); *see Blum,* 465 U.S. at 898–901, 104 S.Ct. 1541 (the "lodestar" incorporates most of the *Johnson* factors); *Hensley v. Eckerhart,* 461 U.S. 424, 434 n. 9, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)("many of these [*Johnson* ] factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate"). Thus, the "lodestar" already reflects the novelty and complexity of the matter, *Blum,* 465 U.S. at 898–99, 104 S.Ct. 1541, the quality of the representation and the results achieved, *id.* at 899, 104 S.Ct. 1541 (an upward adjustment may be justified "only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional' "), and the contingent risk of non-payment. *City of Burlington v. Dague,* 505 U.S. 557, 567, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) ("[W]e hold that enhancement for contingency is not permitted under the fee-shifting statutes at issue."); *In re MiniScribe,* 309 F.3d at 1246–47 (Hartz, J. concurring)(applying *Dague's* rationale to a trustee's application for compensation). Enhancements to the "lodestar" amount are proper only in rare and exceptional cases supported by specific evidence and detailed findings. *Delaware Valley Citizens' Council for Clean Air,* 478 U.S. at 565, 106 S.Ct. 3088; *see Blum,* 465 U.S. at 901, 104 S.Ct. 1541. "The party advocating such a departure bears the burden of establishing that an adjustment is necessary to the calculation of a reasonable fee." *Grant v. Bethlehem Steel Corp.,* 973 F.2d 96, 101 (2d Cir.1992); *accord United States Football League v. Nat'l Football League,* 887

F.2d 408, 413 (2d Cir.1989), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990).

Although nothing more need be said to justify the use of the "lodestar" test, certain issues unique to bankruptcy bolster the need to use it. First, the knee-jerk allowance of the maximum commission under 326(a) can lead to a windfall. There are cases in which the "moneys disbursed" are disproportionate to the services performed. For example, a trustee may "inherit" a substantial bank account, and have nothing more to liquidate. That trustee will perform fewer services than the trustee appointed to represent a "no-asset" estate, who then proceeds to create an estate through litigation recoveries. If the trustee's compensation is keyed solely to the amount he or she disburses, rather than the reasonable and necessary services required by the case, the panel trustee program will become a lottery.

Second, the application of the "lodestar" resolves a practical problem in a case like this one. The line between trustee work, which is covered by the commission, and legal work, which is covered by the fee, is often hard to draw. *In re Lehal Realty Assocs.,* 112 B.R. 590, 591–592 (Bankr. S.D.N.Y.1990). Where the trustee retains counsel, and particularly where the trustee retains his own law firm as counsel, some of the trustee's ministerial duties invariably get billed as legal services. If the trustee receives a bonus in the form of a maximum commission, and his firm receives a legal fee, the legal fees attributable to those trustee services represent

an overpayment, and in essence, double compensation. On the other hand, if the trustee's compensation is based on the "lodestar," and the court applies the same billing rate to the trustee and legal services, the spill over of trustee work into his firm's fee application is irrelevant to the aggregate award.

### 3. The Trustee's "Lodestar"

The Trustee's time records reflect that he (or other lawyers or paralegals in his firm) spent 13.40 hours performing trustee functions up to the time that he filed his final report.[9] Based upon the billing rates of the Trustee and the other professionals and paraprofessionals in his firm, this would have accounted for a fee of $4,135.50. After he filed his final report, the Trustee (or other lawyers or paralegals in his firm) billed an additional $14,837.90 in Trustee time. The billing rates are consistent with attorneys in this area performing comparable services at comparably sized firms,[10] and all of the services leading up to the final report were reasonable and necessary.

■ Many of the post-final report services, however, appear to be legal in nature, and relate to the defense of the Trustee's (and the Kittay Firm's) fee application in light of the Bear Stearns objection. Attached as Schedule A are those time entries culled from the Trustee's time records that relate to the fee objection. The time-value of these services totaled $11,225.75. I conclude that these fees, whether for legal or trustee services, should not be allowed.

9. Just as a trustee sometimes performs (and bills for) legal work, some of the tasks typically associated with a trustee's duties are actually performed by others, such as the trustee's law partners or employees. In this case, six individuals, including the Trustee, billed their time to trustee work.

10. This implicitly accepts the proposition that the same billing rates should apply to the Trustee's legal and non-legal/trustee services. While this may not always be appropriate, no one has argued otherwise in this case or suggested a different rule.

■ While the cost of preparing a fee application is compensable, the cost of defending one may not be. The Bankruptcy Code expressly covers the former. *See* 11 U.S.C. § 330(a)(6)("Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application."). Moreover, the professional must prepare and submit an application in order to get paid. *Boldt v. Crake (In re Riverside–Linden Inv. Co.),* 945 F.2d 320, 323 (9th Cir.1991). There is no parallel statutory requirement to defend against an objection to a fee application, or to receive compensation for the legal fees incurred in that defense. Furthermore, fee litigants, like other litigants, must generally bear their own legal expenses under the "American Rule." *In re St. Rita's Assocs. Private Placement, L.P.,* 260 B.R. 650, 652 (Bankr. W.D.N.Y.2001); *In re DN Assocs.,* 165 B.R. 344, 349–50 (Bankr.D.Me.1994); *see Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) ("In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.")

Nevertheless, some courts have awarded the litigation fees and expenses incurred by the successful applicant out of fear that the failure to do so would dilute the fee award, and encourage parties to file frivolous objections. *E.g., Smith v. Edwards & Hale, Ltd. (In re Smith),* 317 F.3d 918, 929 (9th Cir.2002); *Hennigan Bennett & Dorman LLP v. Goldin Assocs. (In re Worldwide Direct Inc.),* 334 B.R. 108, 111 (D.Del.2005); *In re Ahead Commc'ns Sys., Inc.,* No. 02–30574, 2006 WL 2711752, at *5 (Bankr.D.Conn. Sept.21, 2006). Conversely, other courts have declined to award the fees where the objection was filed in good faith and the objecting party prevailed. *In re Teraforce Tech. Corp.,* 347 B.R. 838, 867 (Bankr.N.D.Tex.2006);

*In re St. Rita's Assocs. Private Placement, L.P.,* 260 B.R. at 652. At least one court has expressed the concern that allowing the losing applicant to recover its legal fees would encourage meritless fee requests because the applicant could earn more fees opposing objections to its frivolous request. *See In re Riverside–Linden Inv. Co.,* 945 F.2d at 323.

In the present case, the Trustee failed to justify a departure from the "American Rule." He relied on § 326 to support his fee, and ignored § 330. Bear Stearns asserted a good faith objection to the Trustee's and the two other requests, and has substantially prevailed. Finally, the Trustee's defense of his and the other fee applications were neither reasonable nor necessary from the standpoint of the other creditors, and plainly failed to provide them with any benefit.

Accordingly, I conclude that $11,225.75 of the post-final report fees should be disallowed, or more accurately, borne by the Trustee and the Kittay Firm instead of the creditors. The balance of the post-final report fees in the amount of $3,612.15 was reasonably and necessarily incurred in completing the administration of the estate. Thus, the Trustee demonstrated under the "lodestar" method that his reasonable and necessary fees totaled $7,747.65.

### 4. Enhancing the "Lodestar"

The final question is whether the Trustee, who is seeking a fee in excess of $64,000, is entitled to a fee enhancement or *Johnson* multiplier of approximately 8.3. Thus posed, the question answers itself.

■ The Trustee failed to sustain his burden of proving that he is entitled to an enhancement of his compensation in this or any other amount. The entire estate was generated from the sale of a single piece of property. The sale was consistent with a

trustee's duty to "collect and reduce to money the property of the estate." 11 U.S.C. § 704(a)(1). There was nothing exceptional about the sale; the debtor undervalued the Apartment in his schedules, and the Trustee sold it at the low end of what GEM said it was worth. To the extent that the Trustee spent time marketing the Apartment, or attempting to get a "carve-out" or pay-off letter from GMAC, his services were reflected in the "lodestar" calculation. Similarly, neither the work done by the Trustee in connection with the arbitration, or the result achieved, were rare or exceptional.

This is not a criticism of the Trustee or his performance. He did what he could with the hand he was dealt. The point is that he has failed to demonstrate, as he must, that this is the rare case that calls for an enhancement of the "lodestar."

## B. Kittay & Gershfeld, P.C. (The Kittay Firm)

The Trustee retained his own law firm to serve as his general bankruptcy counsel. The Kittay Firm seeks aggregate fees in the sum of $70,746.75. The rules for calculating the "lodestar," discussed above, apply to this application as well. The Court has already concluded that the billing rates used by the Firm's shareholders and employees were reasonable. Consequently, I turn to the reasonableness of the services billed to the estate.

### 1. The Duplication of Services

#### a. Real Estate

Bear Stearns argues that the Kittay Firm duplicated the services provided by the two Special Counsels. I agree, al-though not to the degree that Bear Stearns contends. Special Real Estate Counsel was retained by order dated May 9, 2006, *nunc pro tunc* to February 14, 2006, to represent the estate in connection with the sale of the Apartment. The sale closed on July 16, 2006. Special Real Estate Counsel negotiated and prepared two sale contracts, prepared the necessary documents for and attended the closing, and secured the balance of the sale proceeds for the estate. (*See Final Application of Kavanagh Maloney & Osnato, LLP for Allowance of Compensation and Reimbursement of Expenses*, dated Sept. 22, 2006, at ¶ 3)(ECF Doc. # 52.) It billed a total of $10,156.25 for these services, the fees were allowed without objection, and were presumably paid.

The Kittay Firm's time records reflect that it also billed for legal services directly related to the sale or closing documents, and an attorney from the Kittay Firm attended the closing along with Special Real Estate Counsel. The fees attributable to these services, which are set forth in Schedule B, totaled $7,597.53.[11]

 For the most part, these services were duplicative of those provided by Special Real Estate Counsel, and were therefore unnecessary. The estate did not require two sets of lawyers overseeing this transaction. In addition, some of the entries refer to "attention to contract and closing issues," "attention to closing issues," and similar "attention" services. They are too vague, and do not identify what the professional did. The fees pertaining to these duplicative (and sometimes vaguely described) services will be disallowed, subject to two exceptions.

11. Schedule B does not include the services pertaining to the GMAC pay-off letter dispute. A pay-off letter is typically required at the closing, and hence, should have been the sole concern of Special Real Estate Counsel. Here, however, GMAC's delay in issuing the pay-off letter led to litigation, which was appropriately handled by the Kittay Firm.

First, Mr. Kittay's services, which accounted for billed time of $668.28, will be allowed. Mr. Kittay was also the Trustee, and had to be kept informed about the progress of the sale. From the description, these services could just as easily have been classified and billed as trustee work. In that event, they would have been included in the Trustee's "lodestar," and allowed as part of his commission. Since the same billing rates applied to Mr. Kittay's trustee and legal services, the misclassification is harmless, and his services reflected on Schedule B will be allowed. Second, the Kittay Firm had to coordinate to some degree with Special Real Estate Counsel. Combining these two exceptions, the Court will allow $1,500.00 of the services on Schedule B, and disallow the remaining $6,097.53.

The balance of Bear Stearns' challenge to the real estate services lacks merit. The Kittay Firm defended against GMAC's relief from stay motion, and attempted to obtain a § 506(c) waiver or "carve out" from GMAC for the estate. It provided reasonable services in opposing stay relief since the foreclosure and forced sale of the Apartment could have wiped out all of the estate's equity. The opposition to GMAC's motion contributed to the bankruptcy sale and the equity realized by the estate.

██ The Kittay Firm also properly sought a § 506(c) waiver from GMAC. The theory of the waiver is that GMAC, the secured creditor, would benefit directly from the bankruptcy sale, and should, therefore, absorb some of the administrative costs relating to the sale. Such consensual waivers or "carve outs" are commonplace, and it was appropriate for the Trustee to ask for one. The fact that he failed to obtain the waiver does not mean that the Kittay Firm's efforts were unreasonable or unnecessary at the time they

were rendered. Finally, although Special Real Estate Counsel's May 2006 retention was retroactive to February 14, 2006, the Kittay Firm still had to bear the laboring oar on the real estate transaction until Special Real Estate Counsel was actually retained.

### b. The Arbitration

Bear Stearns contends that the Kittay Firm's services relating to the arbitration duplicated those of Special Arbitration Counsel, and given the outcome, provided little benefit to the estate. The Kittay Firm billed $12,008 to these issues. Special Arbitration Counsel also billed $13,097.50, although its fee request is the subject of a Bear Stearns' objection. Under the settlement, Bear Stearns did not pay anything to the estate, and reduced its claim by approximately $790,000. In light of the 1% distribution, the reduction freed up less than $8,000 for distribution to the other unsecured creditors.

Although the outcome was disappointing, the services were nonetheless reasonable at the time that they were rendered. The debtor held two affirmative claims against Bear Stearns, and was also defending against a counterclaim in excess of $2 million. The main affirmative claim sought damages in an unliquidated amount based on allegedly defamatory statements in the Form U–5 issued by Bear Stearns when it terminated the debtor's employment. At the time that the Trustee decided to pursue the arbitration, the law regarding the viability of such claims was unsettled. Some courts had ruled that the statements in a Form U–5 were absolutely privileged, while others had concluded that the statements were only protected by a qualified privilege that could be pierced by proof of malice.

██ On June 28, 2006, the United States Court of Appeals for the Second

Circuit concluded that this represented an "unsettled" and "important" question of New York law, and certified the question to the New York State Court of Appeals. *Rosenberg v. Metlife, Inc.*, 453 F.3d 122, 128 (2d Cir.2006). In late March 2007, New York's highest court concluded, with two judges dissenting, that the statements were absolutely privileged. *Rosenberg v. Metlife, Inc.*, 8 N.Y.3d 359, 834 N.Y.S.2d 494, 866 N.E.2d 439 (2007). Given the unsettled nature of the legal viability of the defamation claim, the decision to pursue it was a reasonable one.

Furthermore, and except as noted, the amount of time devoted to the task was reasonable and not duplicative. The Kittay Firm billed $5,494.50 prior to February 23, 2006, the effective date of Special Arbitration Counsel's retention. These services generally related to investigating the claims and the arbitration. These services obviously did not duplicate the services of Special Arbitration Counsel.

The Kittay Firm billed another $2,669.75 after the retention date, but before the Court signed the *nunc pro tunc* retention order. Here, there was overlap, but it could not be helped. The Kittay Firm was still the only lawyer actually retained during this period to represent the estate.

The balance of $3,843.75 was billed after March 28, 2006, the date that Special Arbitration Counsel's retention order was actually signed. The majority of the services after that date were devoted to consideration of the proposed settlement. The settlement implicated issues of bankruptcy law, and ultimately required approval by this Court under Federal Bankruptcy Rule 9019. Hence, the services were reasonable and necessary.

### 2. Other Objections

#### a. Real Estate

Bear Stearns also complained that the Kittay Firm conducted too many internal conferences regarding the real estate sale, and its objection identified 19 separate multi-lawyer conferences. (*Objection*, at ¶ 26.) One objection was a mistake, as the time records did not reflect any meetings on May 28, 2006, a Sunday. Twelve of the 18 remaining conferences involved two lawyers. (2/7, 2/10, 3/1, 3/3, 3/15, 4/3, 4/12, 4/25, 5/4, 7/6, 7/17 and 7/24.) Eight of these involved the Trustee and another lawyer in his firm. (2/7, 2/10, 3/1, 3/3, 3/15, 4/12, 4/25 and 7/17.) These conferences typically lasted between six and twelve minutes. In light of the length of these "conferences," and for the reasons stated above, these brief meetings reflect instances in which the Trustee's counsel reported to its client about some matter or issue in the case. I do not view these conferences as unreasonably duplicative services, or "padding."

Four of the two-lawyer meetings did not include the Trustee. (4/3, 5/4, 7/6 and 7/24.) The time billed to the July 6th conference has already been reduced by approximately 80% because it duplicated the services of Special Real Estate Counsel. No further reduction is required. The total fee attributable to the remaining three conferences was only $332.50. Sometimes, two lawyers in the same firm must discuss matters. Given the *de minimis* amount involved, these fees will be allowed.

Lastly, the remaining six conferences involved three lawyers. (2/27, 3/27, 4/5, 5/16, 6/22 and 6/27.) The time charges pertaining to the June 22nd conference have already been reduced by approximately 80% because it duplicated the services of Special Real Estate Counsel. No further reduction is required. The aggregate time charges for the remaining conferences were $1,362. The Kittay Firm has failed to justify the need or the partic-

ipation of three lawyers at these internal conferences. One third of $1,362, or $454, will be disallowed.

### b. Arbitration

Bear Stearns also objected on the ground that the time records relating to the arbitration reflected "numerous duplicative internal meetings" on 1/6, 1/11, 1/17, 1/20, 2/22, 2/27, 3/8, 4/18, 5/30, 6/22 and 6/28. (*Objection,* at ¶ 24.) The meetings on 1/11 (.3 hrs.), 1/17 (.1 hrs.), 2/27 (.2 hrs.), 3/8 (.5 hrs.) (three conferences), 4/18 (.15 hrs.) and 6/28 (.2 hrs.) were relatively brief and involved the Trustee and one other lawyer in the firm. For the reasons already stated, the time will be allowed. The meetings on 1/6 (.2 hrs.) and a second meeting on 2/27 (.1 hrs.) between two lawyers at the Kittay Firm were brief, and the time will be allowed for the reasons stated.

The participation of three lawyers in a February 22 meeting with Bear Stearns' counsel is a different story. On that day, the Trustee billed 1.75 hours, Michelle G. Gershfeld billed 1.5 hours and Robin Meyer–Konigsberg billed 1.2 hours. They accounted for $1,802.25 in billed time. The Trustee has failed to demonstrate the reasonableness or necessity of allowing three lawyers to participate in this meeting. The Court will disallow $600.00 under the theory that the Trustee may have attended in his Trustee's capacity, accompanied by one of his lawyers, but the services provided by the second lawyer were unnecessary.

In addition, on May 30, 2006 and June 22, 2006, the Kittay Firm's attorneys held multi-lawyer conferences regarding the settlement. The estate's accountant, Gary R. Lampert, also attended the May 30th conference, and billed time. The Kittay Firm's attorneys billed $999.00 on these two days, and as in the case of the real estate conferences, $333.00 will be disallowed.

I have considered Bear Stearns' remaining objections, and conclude that they lack merit. Furthermore, I have reviewed the application and time records submitted by the Kittay Firm. Based on that review, I conclude that the balance of the services not specifically discussed above were reasonable and necessary. Accordingly, $7,484.53 of the fees sought by the Kittay Firm will be disallowed, and the balance of the $70,746.75 request will be allowed under the "lodestar" method. The Kittay Firm has not sought an enhancement of that fee.

### C. Gusrae, Kaplan, Bruno & Nusbaum PLLC (Special Arbitration Counsel)

Special Arbitration Counsel seeks $13,097.50 in fees. Its services were reasonable and necessary for the same reason that the Kittay Firm's arbitration-related services were. Nevertheless; the majority of its time records fail under the UST Guidelines. The principal problem is one of "lumping." [12] "Lumping" refers to the practice of aggregating time entries involving two or more discrete tasks without identifying the time spent on each task. "Lumping" makes it difficult to determine if the timekeeper spent a reasonable amount of time on each discrete task. As a result, the timekeeper fails to sustain its burden of proving that its fees are reasonable. The UST Guidelines permit "lump-

---

**12.** There are also some mathematical discrepancies. In some cases, the time charged for a particular day exceeds the "lodestar," *i.e.,* the time multiplied by the billing rate. For example, on May 8, 2006, Mr. Gehn billed 30 minutes at an hourly rate of $350.00, and listed the fee for that service as $350.00 rather than $175.00. (*See* annexed Schedule C–2.) The discussion that follows assumes that in this and in similar situations, Special Arbitration Counsel is seeking to recover a fee of $350.00.

ing" only where the aggregate time does not exceed 30 minutes. UST Guidelines, (b)(4)(v).

■] Schedule C–1 identifies 23 "lumped" time entries. These entries account for 35.5 hours, $8,150 in fees, and a blended hourly rate of $229.58. In light of the UST Guidelines, the Court will limit the compensable time to 30 minutes for each of the "lumped" entries. At a blended hourly rate of $229.58, this translates to allowed fees of $2,640.14. The balance of the fees attributed to these entries, $5,509.86, will be disallowed.

Many of the entries identified on Schedule C–1 are also too vague. They record a telephone conversation, conference or intra-firm meeting or discussion without disclosing the subject matter or the other parties, or both. These vague entries appear in boldface on Schedule C–1. These deficiencies provide additional grounds for disallowing the related fees, but in light of the reduction for "lumping," there will be no further reduction on account of the vagueness of these entries. The time records include additional vague entries set forth on Schedule C–2. These entries account for $2,685.00 of billed time, and 50% will be disallowed. Finally, Special Arbitration Counsel's records include a one-hour time entry on January 20, 2006. The entry refers to a "NASD Conference Call" involving David A. Ghen, Esq., and a fee of $350.00. This call occurred more than a month before the effective date of the firm's retention, and fee relating to this call is disallowed.

Accordingly, $7,202.36 of the time sought is allowed, and the balance is disallowed.

## D. Reimbursement of Expenses

The Trustee does not seek any reimbursement of expenses. The Kittay Firm and Special Arbitration Counsel seek a total of $1,450.73. In light of the fee reductions and the small amount of expenses involved in this request, the expenses are allowed. The Trustee is directed to submit an order consistent with this decision.

## SCHEDULE "A"

### Kittay Firm
### Defense to Fee Objection

**DAVID R. KITTAY:** ($495/hr.)

Total: $3,564.00

| Date | Description of Service | Time |
|------|------------------------|------|
| 03/21/2007 | Attention to objection | 0.40 |
| 03/21/2007 | Office conference with Robin Konigsberg regarding Bear Stearns' objection | 0.10 |
| 03/30/2007 | Office conference with Robin Konigsberg regarding response to Bear Stearns' objection | 0.20 |
| 04/04/2007 | Office conference with Robin Konigsberg regarding response | 0.20 |
| 04/05/2007 | Review response drafted by Robin Konigsberg and send email with comments to same | 0.40 |
| 04/09/2007 | Office conference with Robin Konigsberg regarding O'Neill email | 0.10 |
| 04/13/2007 | Preparation for and attending final hearing for approval of final report and final fee applications, as well as objections to same by Bear Stearns | 5.80 |

**MICHELLE G. GERSHFELD:** ($420/hr.)

Total: $546.00

| Date | Description of Service | Time |
|------|------------------------|------|
| 03/23/2007 | Conference with Robin Konigsberg regarding objection to our fees, analysis of same and conference with Brad O'Neill regarding same and potential agreed upon reduction | 1.30 |

**JUDITH L. SIEGEL:** ($395/hr.)

Total: $355.50

| Date | Description of Service | Time |
|------|------------------------|------|
| 03/22/2007 | Review Bear Stearns' objection, research for response and conference with Robin Konigsberg regarding same | 0.60 |
| 03/29/2007 | Review and revise Robin Konigsberg's initial draft response to Bear Stearns | 0.20 |
| 04/06/2007 | Telephone conference with Robin Konigsberg regarding response to objection | 0.10 |

**ROBIN MEYER–KONIGSBERG:** ($255/hr.)

Total: $6,579.00

| Date | Description of Service | Time |
|------|------------------------|------|
| 03/21/2007 | Review objection from Bear Stearns to fee application and conference with David Kittay regarding same. | 0.70 |
| 03/21/2007 | Telephone conference with Chambers regarding adjournment of final hearing, conference with V. Brous regarding status of case, draft, prepare and file and fax correspondence advising of adjournment and email to firm regarding same | 0.85 |
| 03/22/2007 | Office conference with Judith Siegel regarding Bear Steans objection and drafting of response to same | 0.60 |
| 03/23/2007 | Draft and send e-mail to J. Rudel regarding fee objection | 0.20 |
| 03/23/2007 | Review e-mail from D. Ghen regarding Bear Stearns' objection and fax copy of objection to same | 0.20 |
| 03/23/2007 | Prepare response to Bear Stearns' objection to fees including review of file and time records for history of case and work performed by Trustee and professionals and conference with Michelle Gershfeld regarding same | 2.30 |
| 03/23/2007 | Preparation for and legal research regarding Trustee's Commissions | 0.65 |
| 03/29/2007 | Draft response to Bear Stearns' objection | 1.60 |
| 03/30/2007 | Draft response to Bear Stearns' objection and conference with David Kittay regarding same | 4.60 |
| 04/02/2007 | Draft response to Bear Stearns' objection to fees and commissions | 4.90 |
| 04/04/2007 | Telephone conference with D. Ghen's office regarding intent to file response to Bear Stearns' objection | 0.15 |
| 04/04/2007 | Draft, review and revise response to Bear Stearns' objection to fee and commission applications | 4.40 |
| 04/04/2007 | Office conference with David Kittay regarding response to Bear Stearns' objection and revisions to objection regarding David Kittay's comments | 0.70 |
| 04/05/2007 | Telephone call to and telephone conference with C. Bruno regarding response to Bear Stearns' objection | 0.30 |
| 04/05/2007 | Review Bear Stearns' objection and response to same regarding any issues not addressed in response | 0.80 |
| 04/05/2007 | Review response and Objection and draft and send e-mail to David Kittay regarding whether certain issues are adequately addressed | 0.35 |
| 04/06/2007 | Telephone conference with Judith Siegel regarding status of response to Bear Stearns' objection | 0.10 |
| 04/06/2007 | Review email from David Kittay regarding revisions to response to Bear Stearns' objection | 0.10 |
| 04/06/2007 | Review and revise response to Bear Stearns and email to David Kittay regarding same | 1.70 |
| 04/09/2007 | Review email from B. O'Neill regarding time records, office conference with David Kittay regarding same and prepare and fax records to Mr. O'Neill | 0.40 |

04/09/2007 Prepare file for final hearing 0.20

## STEPHANIE SUZANNE PENDER ($125/hr.)

Total: $181.25

| Date | Description of Service | Time |
|------|------------------------|------|
| 03/30/2007 | Electronically file letter adjourning hearing | 0.20 |
| 04/06/2007 | Prepare and electronically file Response, send copy to Chambers | 0.45 |
| 04/06/2007 | Prepare and serve Response to Bear Stearns' Objection, prepare certificate of service | 0.80 |

**GRAND TOTALS** 36.65 hrs. $11,225.75

## SCHEDULE "B"
### Kittay Firm
### Real Estate Sale

## DAVID R. KITTAY: (495/hr.)

Total: 668.28

| Date | Description of Service | Time |
|------|------------------------|------|
| 06/19/2006 | Office conference with Robin Meyer re closing | 0.15 |
| 06/19/2006 | Further office conference with Robin Meyer re closing | 0.15 |
| 06/22/2006 | Office conference with Robin Meyer re power of attorney | 0.20 |
| 06/26/2006 | Review power of attorney | 0.15 |
| 06/26/2006 | Office conference with Robin Meyer re power of attorney | 0.10 |
| 07/17/2006 | Telephone conference with Michelle Gershfeld regarding closing issues | 0.30 |
| 07/17/2006 | Review closing statement and associated documents | 0.30 |

## MICHELLE G. GERSHFELD: (420/hr.)

Total: 4,956.00

| Date | Description of Service | Time |
|------|------------------------|------|
| 05/18/2006 | Attention to sale closing issues | 0.30 |
| 05/22/2006 | Telephone conference with Dennis of Steven Baum's office regarding sale of condo, timing and debt remaining | 0.20 |
| 05/22/2006 | Several conferences with Joel Rudell regarding approval of sale, condo board, check for escrow monies, order and related items and research same | 0.40 |
| 06/02/2006 | Attention to contract and execution issues | 0.40 |
| 06/08/2006 | Attention to closing issues | 0.30 |
| 06/19/2006 | Office conference with Robin Meyer regarding delays in closing on real estate and additional documentation for David Kittay to sign | 0.20 |
| 06/19/2006 | Review and comments to affidavits for David Kittay to sign in connection with closing | 0.60 |
| 06/19/2006 | Conference with Robin Meyer regarding issues with closing documents and changes required, focusing on taxes not to be an obligation of this estate | 0.30 |
| 06/21/2006 | Office conference with Robin Meyer regarding power of attorney from J. Rudell for sale of property | 0.10 |
| 07/06/2006 | Attention to closing issues and date scheduled (next Friday) and conference with Robin Meyer regarding same | 0.20 |
| 07/07/2006 | Attention to documents for closing, conference with Joel Rudell regarding same, fax over power of attorney | 0.40 |
| 07/13/2006 | Several calls with Joel Rudell and prepare documents for David Kittay's signature and meet with David Kittay for signatures on the same | 1.30 |
| 07/14/2006 | Preparation for and attend closing and analysis of closing documents and telephone conference with David Kittay regarding same | 6.20 |
| 07/17/2006 | Analysis of real estate closing statement, adjustments and allocations | 0.90 |

## JUDITH L. SIEGEL: (395/hr.)

Total: 296.25

| Date | Description of Service | Time |
|---|---|---|
| 05/18/2006 | Talk to counsel for purchaser, talk to mortgage company re sale, closing and contact and terms | 0.25 |
| 06/22/2006 | Attention to issues regarding to closing | 0.10 |
| 07/13/2006 | Work on closing | 0.40 |

**ROBIN MEYER–KONIGSBERG:** (255/hr.)

Total: 1,568.25

| Date | Description of Service | Time |
|---|---|---|
| 05/16/2006 | Prepare copy of contract for sale of real property for sale hearing | 0.10 |
| 05/19/2006 | Telephone conference with purchaser and purchaser's attorney regarding status of contract for sale of property | 0.10 |
| 05/31/2006 | Review e-mail from J. Rudell regarding cancelling home equity line of credit and review agreement establishing same for contact information for GMAC | 0.20 |
| 05/31/2006 | Review e-mail from J. Rudell regarding scheduling closing and documents needed from purchaser | 0.10 |
| 05/31/2006 | Telephone conference with R. Mehlman regarding canceling GMAC line of credit | 0.20 |
| 05/31/2006 | Review e-mail from R. Mehlman regarding contact information for S. Baum's office and telephone call to Baum's office to cancel GMAC line of credit | 0.10 |
| 06/02/2006 | Review signed contract for sale of real property from David Kittay | 0.10 |
| 06/02/2006 | Review contracts from J. Rudell signed by Okamus for sale of real property | 1.70 |
| 06/05/2006 | Review e-mail from J. Rudell regarding status of David Kittay signing real property contract | 0.10 |
| 06/06/2006 | Telephone call with and fax to Joel Rudell regarding Trustee's execution of real property contract | 0.20 |
| 06/07/2006 | Review contract for sale of property executed by David Kittay | 0.10 |
| 06/14/2006 | Review and respond to e-mail from Joel Rudell regarding scheduling closing | 0.10 |
| 06/14/2006 | Review fax from J. Rudell regarding scheduling closing on real property | 0.10 |
| 06/14/2006 | Review e-mail from J. Maniscalco regarding closing date for sale of apartment | 0.10 |
| 06/19/2006 | Briefly review real property sale documents from J. Rudell | 0.20 |
| 06/19/2006 | Review documents for sale of real property | 0.30 |
| 06/19/2006 | Office conference with Michelle Gershfeld regarding closing documents received from J. Rudell | 0.20 |
| 06/19/2006 | Telephone conference with J. Rudell regarding changes to closing papers | 0.30 |
| 06/19/2006 | Numerous office conferences with Michelle Gershfeld and David Kittay regarding executing documents for sale of real property and whether to give Michelle Gershfeld power of attorney or have David Kittay sign documents prior to closing | 0.80 |
| 06/20/2006 | Send e-mail to J. Rudell regarding closing date and power of attorney for Michelle Gershfeld | 0.10 |
| 06/21/2006 | Review power of attorney from J. Rudell for sale of property, conference with Michelle Gershfeld regarding same and draft e-mail to J. Rudell with proposed revisions to power of attorney | 0.25 |
| 06/22/2006 | Review e-mail from J. Rudell regarding revisions to power of attorney for closing on real property | 0.10 |
| 06/22/2006 | Office conference with David Kittay regarding power of attorney to Michelle Gershfeld for closing on real property and review of forms regarding same | 0.20 |
| 06/26/2006 | Review power of attorney from J. Rudell and office | 0.10 |
| 06/30/2006 | Telephone conference with D. Jose regarding documents needed to close on real property | 0.10 |
| 06/30/2006 | Review and respond to e-mail from J. Rudell regarding scheduling closing of real property | 0.10 |

07/07/2006 Review documents for closing on real property including power of 0.10
 attorney

**TANYA T. BRACERO:** (145/hr.)

Total: 108.75

| Date | Description of Service | Time |
|------|------------------------|------|
| 07/11/2006 | Preparation for closing | 0.20 |
| 07/13/06 | Preparation for closing | 0.55 |
| | **GRAND TOTALS** 20.08 hrs. 7,597.53 | |

## SCHEDULE "C–1"
### Special Arbitration Counsel
### Lumped Entries

| Date | Attorney | Description of Service | Time | Fee |
|------|----------|------------------------|------|-----|
| 02/27 | JHC | Reviewed affidavit for special counsel retention and drafted version of same; **multiple telephone calls and emails with trustee's counsel;** finalized and sent document to trustee; drafted letter forwarding package | 2.2 | 385.00 |
| 02/27 | DAG | NASD conference call; prepared affidavit; conference with Michelle Gershfeld | 1.0 | 385.00 |
| 03/06 | JHC | Began preparation of document request; reviewed claim; answer and counterclaims: organized file | 0.9 | 157.50 |
| 03/06 | DAG | Prepared document request; **intra-firm discussion** | 0.8 | 280.00 |
| 03/07 | JHC | Continued preparation of draft document request; **intra-firm discussions;** Westlaw research re: Bear Stearns and mutual fund practices: organized file re: bankruptcy and NASD matters | 2.4 | 420.00 |
| 03/08 | JHC | Multiple telephone calls and emails with trustees re: additions to document request: modified same: **intra-firm discussions re: same;** finalized and sent form to all parties | 1.4 | 245.00 |
| 03/24 | JHC | Reviewed Bear Steams' first document request and created template for response; began preparation of draft answers | 2.3 | 402.50 |
| 03/31 | JHC | Continued preparation of responses to Bear Stearns; created and sent emails to trustee and bankruptcy attorney re: same; sent request to Eric Brous for review and comment | 0.9 | 157.50 |
| 04/11 | DAG | **Intra-firm discussion re: discovery; telephone conference with trustee** | 2.0 | 700.00 |
| 04/12 | JHC | Continued drafting and modifying document response to Bear Steams' first document request; **multiple telephone calls and email exchanges with Eric Brous' bankruptcy counsel; intra-firm discussions re: same** | 1.4 | 245.00 |
| 04/17 | JHC | Multiple telephone calls and email exchanges with trustee re: response to Bear Steams' document request; intra-firm discussions re: same; finalized request and sent to all parties | 1.8 | 315.00 |
| 04/19 | JHC | Reviewed document production from Bear Stearns: **intra-firm discussions re: same** | 1.6 | 280.00 |
| 04/20 | JHC | Reviewed file for responsive documentation for Bear Steams' production: created and sent e-mails to client re: same | 1.0 | 175.00 |
| 04/20 | DAG | **Intra-firm discussion: conference with trustee** | 1.0 | 350.00 |

| Date | Attorney | Description of Service | Time | Fee |
|------|----------|------------------------|------|------|
| 04/28 | JHC | Continued to review documents for document production to Bear Steams; drafted letter and copied documents; faxed and sent to Bear's Counsel | 1.7 | 297.50 |
| 05/01 | JHC | Reviewed document response from Bear; **discussion re: preparation of motion to compel; intra-firm discussions re: same;** reviewed new documents received from Bear pursuant to document request | 1.7 | 297.50 |
| 05/08 | JHC | Reviewed new arbitrator information form; pulled various cases; multiple telephone calls with Bear Stearns' counsel re: appointment of chairperson | 0.9 | 157.50 |
| 06/21 | JHC | **Intra-firm discussion re: filing and hearing matters;** drafted and finalized 20–day letter. NASD subpoena and follow up document request: **multiple telephone calls and emails to trustee and client: NASD research re:** various Bear personnel: **sent letters to respective parties** | 3.2 | 560.00 |
| 06/21 | DAG | Prepared for 2–day exchange; issued subpoenas: **intra-firm discussion: strategy meeting** | 1.5 | 525.00 |
| 06/22 | JHC | **Conference call with trustee; intra-firm discussion re: upcoming trial** | 1.4 | 425.00 |
| 06/22 | DAG | **Intra-firm discussion;** telephone conference with trustee; re: status of case | 1.5 | 525.00 |
| 06/26 | DAG | Conference call with trustee re: status of case; **intra-firm discussion** | 1.5 | 515.00 |
| 08/22 | JHC | Reviewed file; drafted final fee application to federal court; **multiple telephone calls and emails to trustee** | 1.4 | 350.00 |
| Totals | | | 35.5 | 8,150.00 |

## SCHEDULE "C–2"
### Special Arbitration Counsel
### Vague Entries

| Date | Attorney | Description of Service | Time | Fee |
|------|----------|------------------------|------|------|
| 03/02 | DAG | Intra-firm discussion; review file | 0.4 | 140.00 |
| 03/20 | DAG | Intra-firm discussion | 0.6 | 210.00 |
| 03/28 | JHD | Intra-firm discussions re: document request and answers | 0.4 | 70.00 |
| 04/03 | DAG | Intra-firm discussion | 0.7 | 245.00 |
| 04/13 | DAG | Intra-firm discussion re: document production | 1.0 | 350.0 0 |
| 04/20 | DAG | Intra-firm discussion: conference with trustee | 1.0 | 350. 00 |
| 05/05 | DAG | Intra-firm discussion re: discovery and motions | 0.8 | 280.00 |
| 05/08 | DAG | Intra-firm discussion with chairman | 0.5 | 350.00 |
| 05/24 | DAG | Intra-firm discussion | 0.4 | 140.00 |
| 06/19 | DAG | Intra-firm discussion re: preparation for hearing | 1.0 | 3 50.00 |
| 08/04 | DAG | Intra-firm discussion; prepared and sent letter trustee's office | 0.5 | 200.00 |
| Totals | | | 7.3 | 2,685.00 |