[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-15108

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 26, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00582-CV-JFG-S
BKCY No. 04-8130-TOM11

In Re:  CITATION CORPORATION,

                                                              Debtor.

_____

MILLER BUCKFIRE & CO., LLC,

                                                              Plaintiff-Appellee
                                                              Cross-Defendant,

        versus

CITATION CORPORATION,

                                                              Defendant-Appellant
                                                              Cross-Plaintiff,

VALREY W. EARLY, III,
US Bankruptcy Administrator,
Northern District of Alabama,

                                                              Defendant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(July 26, 2007)**

Before BLACK and PRYOR, Circuit Judges, and LIMBAUGH,[*] District Judge.

BLACK, Circuit Judge:

Appellant, Citation Corporation (Citation), appeals the district court's reversal of the bankruptcy court's order awarding an adjusted fee for the investment banking services of Appellee, Miller Buckfire & Co. (Miller Buckfire). In addition, Citation appeals the district court's affirmance of the bankruptcy court's finding that Miller Buckfire's failure to disclose potential conflicts did not violate Federal Rule of Bankruptcy Procedure 2014 or harm the bankruptcy estate.

We reverse the district court in part and conclude the bankruptcy court did not abuse its discretion by adjusting the fee for Miller Buckfire's services. We also remand to the bankruptcy court for a determination of whether Miller Buckfire violated Rule 2014 and any penalty that may be appropriate. We, therefore, reverse and remand for further proceedings consistent with this opinion.

## I. STATEMENT OF THE CASE

On July 30, 2004, Citation hired Miller Buckfire pursuant to an Engagement Letter to provide Citation financial advisory and investment banking services necessary for a potential restructuring. In the Engagement Letter, Citation agreed to pay Miller Buckfire $150,000.00 upon execution of the letter and a restructuring

---

[*] Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri, sitting by designation

fee of $3.5 million. According to the terms, Miller Buckfire would receive monthly payments of $150,000 which the parties agreed would be credited against the Restructuring Fee.

On September 18, 2004, Citation filed a Chapter 11 petition in the United States Bankruptcy Court for the Northern District of Alabama. At the same time, Citation filed a Retention Application to retain Miller Buckfire as an employed professional of the estate. The bankruptcy court entered a Retention Order allowing Citation to retain Miller Buckfire under the terms of the Engagement Letter with one important caveat. The bankruptcy court specifically reserved the right to review the overall fee subject to the reasonableness standard codified in 11 U.S.C. § 330. Miller Buckfire agreed to the Retention Order, including the bankruptcy court's thorough review of its fee under 11 U.S.C. § 330.

Within five months of retaining Miller Buckfire, the bankruptcy court confirmed Citation's Chapter 11 restructuring plan. In its final fee application, Miller Buckfire sought approval of its Restructuring Fee of $3.5 million plus expenses. Specifically, Miller Buckfire sought approval of all fees Citation had

paid Miller Buckfire to date ($1,189,622.90), all expenses paid ($180,215.26),[1] and the balance of $2,291,128.45.[2]

At the hearing on the fee application, the debtors argued that Miller Buckfire had a conflict of interest in its representation of Citation. Specifically, Citation alleges that Miller Buckfire should have disclosed its prior dealings with Kelso & Company, a private equity firm with a large equity interest in Citation. In addition, debtors argued the services provided were much less extensive than originally expected and, as a result, Miller Buckfire's fee should be reduced.

The bankruptcy court first found that Miller Buckfire did not suffer under a conflict of interest because it lacked final decision-making authority and was insulated from any potential influence by the unsecured creditors' committee and its counsel. As for Miller Buckfire's fee, the bankruptcy court thoroughly reviewed 16 factors[3] provided by statute and relevant precedent, and found "1) the

_____

[1] The parties have reached an agreement that $65,148.51 in expenses are due to Miller Buckfire. Miller Buckfire is also claiming $110,351.80 as reimbursement for attorney fees for its counsel. The bankruptcy court found no itemization for these expenses and denied the request. The district court noted that the bankruptcy court must have overlooked Miller Buckfire's detailed itemization of its attorney's fees, which had been filed with the court. The district court ruled, and we agree, that "allowance of this amount shall be determined by the Bankruptcy Court" on remand.

[2] This amount also reflects a credit for a pre-petition retainer held by Miller Buckfire for $54,051.87.

[3] The factors the bankruptcy court considered are: (1) Sufficiency of the fee application; (2) Independent review of the application; (3) Nature, extent, and value of the services; (4) Time and labor required; (5) Novelty of the work; (6) The skill required; (7) The preclusion of other

services originally anticipated were not actually required; 2) the hours expended were slightly excessive; and 3) the resulting hourly rate was also excessive." The bankruptcy court considered all the factors including the lodestar, which requires a court to find a reasonable rate and then multiply that rate by the hours actually expended to benefit the estate to calculate an appropriate fee. The bankruptcy court approved fees in the amount of $2,137,500.00 which amounted to a fee of $750.00 per hour.

On appeal, the district court affirmed the bankruptcy court's finding on the conflict of interest issue but reversed the bankruptcy court's determination of Miller Buckfire's fee. The district court found the bankruptcy court was correct to consult the factors set out in 11 U.S.C. § 330, but erred as a matter of law when it factored Miller Buckfire's hourly lodestar into its decision. The district court found "[t]he bankruptcy court . . . is not free to transform a fixed rate contract, knowingly entered into by knowledgeable parties at arms length, into an hourly rate contract." The district court instructed the bankruptcy court on remand to reconsider Miller Buckfire's fee application with the understanding that "the

employment; (8) The professional's customary fee; (9) Any fixed or contingent fee; (10) Time limitations imposed by the Court; (11) Amount involved and results obtained; (12) Experience, reputation and ability of the professionals; (13) The undesirability of the case; (14) The Nature and length of the professional relationship; (15) Awards in similar cases; (16) Determination of the lodestar.

contract was a product of free and equal bargaining by sophisticated, knowledgeable parties, fixed rate contracts are typical of the financial advisory and investment banking business, and the fixed-fee contract market rate for investment bankers in similar transactions is the appropriate benchmark." The district court instructed the bankruptcy court that the only circumstance that would warrant a reduction from the contracted-for fee would be evidence that Miller Buckfire did not perform its duties under the contract.

Citation appeals, arguing the district court erred in finding the bankruptcy court abused its discretion by calculating a lodestar fee and by finding that the bankruptcy court found Miller Buckfire did not violate Federal Rule of Bankruptcy Procedure 2014.

## II. STANDARD OF REVIEW

Generally, this Court reviews the bankruptcy and district courts' rulings on questions of law *de novo* and reviews the bankruptcy court's findings of fact for clear error. *Rush v. JLJ Inc.* (*In re JLJ Inc.*), 988 F.2d 1112, 1116 (11th Cir. 1993). As for a bankruptcy court's allowance of professional fees and expenses, this Court reviews the decision for abuse of discretion. *Stroock & Stroock & Lavan v. Hillsborough Holdings Corp.* (*In re Hillsborough Holdings Corp.*), 127 F.3d 1398, 1401 (11th Cir. 1997). An appellate court should reverse the bankruptcy court's

6

decision if the bankruptcy court applied an incorrect legal standard, failed to follow proper procedures, or made factual findings that were clearly erroneous. *Id.* "Given the Bankruptcy Code's overriding concern for keeping administrative expenses to a minimum so as to preserve as much of the estate as possible for the creditors, we must carefully review the legitimacy of such claims." *McMillan v. Joseph Decosimo and Co.* (*In re Das A. Borden & Co.*), 131 F.3d 1459, 1464 (11th Cir. 1997).

### III.  DISCUSSION

A.    *Miller Buckfire's Fee*

Miller Buckfire essentially argues that a bankruptcy court makes an error of law if it calculates a lodestar fee as part of a reasonableness review under 11 U.S.C. § 330 for the services of an investment bank, which has historically charged a fixed or percentage fee.

The starting point for any discussion concerning a professional's fee is the relevant statutory framework set out in 11 U.S.C. §§ 327-330.  Section 327 of the Bankruptcy Code authorizes the trustee, with the bankruptcy court's approval, to employ professionals "to represent or assist the trustee in carrying out the trustee's duties under" the Bankruptcy Code.  11 U.S.C. § 327(a).  In particular, § 327 allows the trustee, with the court's approval, to employ a professional who has

7

represented the debtor "for a specified special purpose . . . if in the best interest of the estate." 11 U.S.C. § 327(e). Sections 328 and 330 provide two separate mechanisms for the estate to employ a professional.

Section 328 allows the trustee, with the bankruptcy court's approval, to employ a professional under § 327 "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Even if the trustee and the bankruptcy court pre-approve a professional's compensation pursuant to § 328, the bankruptcy court "may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." *Id.*

Absent pre-approval under § 328, the bankruptcy court awards a professional "reasonable compensation for actual, necessary services rendered" by the professional based on "the nature, the extent, and the value of such services," and considering the time spent on such services, and the cost of comparable services. 11 U.S.C. § 330(a).

8

The differences between §§ 328 and 330 affect the timing and process of the court's review of fees. For instance, under § 328, the bankruptcy court reviews the fee at the time of the agreement and departs from the agreed fee only if some unanticipated circumstance makes the terms of that agreement unfair. Under § 330, the court reviews the fees after the work has been completed and looks specifically at what was earned, not necessarily at what was bargained for at the time of the agreement. Bankruptcy professionals are aware that the amount of any professional's fees will be less certain if the bankruptcy court awards fees under § 330. Such uncertainty prompted Congress to enact § 328 to allow professionals to have greater certainty as to their eventual payment. *See Coho Energy Inc. v. Thomas & Culp LLP* ( *In re Coho Energy, Inc.*), 395 F.3d 198, 204 (5th Cir. 2004).

In this case, the bankruptcy court specifically reserved the right to award Miller Buckfire fees pursuant to § 330. Originally, the parties sought retention under the more deferential § 328. The bankruptcy court specifically noted that § 328 would not allow it "the opportunity to fairly review [Miller Buckfire's] application and to pay them as they ought to be paid." Miller Buckfire objected, noting that "it would be simply unfair to expect Miller Buckfire to have done all of the work and to get to the end of the case and have the aggrieved party stand up before Your Honor and take a look at some lodestar method of billing rates . . . and

9

suggest to the court that somehow Miller Buckfire's fees should be reduced." The bankruptcy court allowed the retention of Miller Buckfire, but only with the reservation of the right to review its fees under § 330. With the knowledge of this possibility, Miller Buckfire still entered into the agreement and continued to provide services.

The district court, therefore, puts too much emphasis on the contract between Citation and Miller Buckfire when it advises that "the starting points for the court's considerations are that the contract was a product of free and equal bargaining by sophisticated, knowledgeable parties." Such emphasis would be appropriate when a bankruptcy court reviews a fee pre-approved under § 328 for unanticipated circumstances that may warrant an adjustment to the fee. The court should not place the same emphasis on the contract when the bankruptcy court reviews the fee pursuant to § 330. Before Citation filed its Chapter 11 petition, its agreement with Miller Buckfire was the product of free and equal bargaining. Once Citation filed for Chapter 11 relief, however, its property became property of the estate, and under § 327, Miller Buckfire must contract with the trustee with the approval of the court to receive its fee as an administrative expense. That contract specifically reserved the bankruptcy court's right to review Miller Buckfire's fee request pursuant to § 330. Miller Buckfire failed to bargain with the court and the

10

estate to have its fee pre-approved under § 328 when it had the opportunity. Instead, it chose to perform services with the knowledge that its fee would be reviewed for reasonableness pursuant to § 330. Therefore, the district court was incorrect to attach so much weight to the original contract between Citation and Miller Buckfire.

The ultimate issue is whether it is appropriate for a bankruptcy court to consider, as one of many factors, a lodestar analysis in determining what Miller Buckfire *earned* when it reviews fees under § 330. Miller Buckfire takes the position that, as an investment bank who historically has charged a fixed fee, a lodestar method of analysis is always inappropriate. When looking at § 330, however, the statute instructs the court to look at: "the *nature*, the *extent*, and the *value* of such services," as well as the *time* spent on such services, and the cost of comparable services in other cases. 11 U.S.C. § 330(a)(1)(3) (emphasis added). Specifically, the relevant factors in making such a determination include:

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

11

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed;

. . .

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. 330(a)(3).

Four of the five required statutory factors either explicitly or implicitly direct a bankruptcy court to examine the amount of time spent on either the project as a whole or to examine the time spent on individual units of the professional's work. The lodestar method is one way, but certainty not the only way, to ensure every unit of the professional's work is valuable to the completion of the Chapter 11 case. Therefore, it is appropriate, but not required, for a bankruptcy court to use a lodestar analysis to review an investment bank's fees for reasonableness.

The Tenth Circuit agreed in a factually similar decision discussing § 330's applicability to investment banks. *Houlihan Lokey Howard & Zukin Capital v. Unsecured Creditors' Liquidating Trust* (*In Re Commercial Fin. Servs. Inc.*), 427 F.3d 804 (10th Cir. 2005). It held a lodestar analysis was a factor a bankruptcy court could consider when reviewing an investment bank's request for fees under § 330. *Id.* at 812.

In *Houlihan*, the investment bank Houlihan Lokey (Houlihan) sought fees and expenses in the amount of $1,920,967.74 mostly based on its monthly advisory fees. *Id.* at 807. Houlihan initially sought approval of a flat transaction fee for its services under § 328. *Id.* at 808. Just as in this case, the bankruptcy court refused and expressly reserved judgment as to the reasonableness of the fees under § 330. *Id.* at 809. At the conclusion of the case, Houlihan again urged the bankruptcy court to review its fee application under the more deferential § 328. *Id.* Again, the bankruptcy court refused and reaffirmed that it would review the fees under § 330 for reasonableness. *Id.* at 808-09. In so doing, the bankruptcy court focused on what Houlihan had earned. *Id.* at 809. Specifically, it looked at the rates Houlihan had earned in the past, regardless if it charged by the hour, and compared those rates with rates earned by other professionals. *Id.* In the end, the court determined appropriate rates and multiplied them by the actual and necessary hours to determine the reasonable fee. *Id.* at 810.

In reviewing the bankruptcy court's decision, the Tenth Circuit looked to the text of § 330. As discussed above, the text requires bankruptcy courts to "consider the nature, the extent, and the value of such services." 11 U.S.C. § 330(a)(3)(A). The Tenth Circuit held, and we agree, that the § 330 factors require a court to examine the amount of time spent on either the project as a whole or to examine

13

the time spent on individual units of the professional's work. *Houlihan Lokey*, 427 F.3d at 812. Therefore, it held an "adjusted lodestar analysis" was an appropriate way to determine an investment bank's reasonable fee. *Id.*

Section 330 and the Bankruptcy Code as a whole have an "overriding concern for keeping administrative expenses to a minimum so as to preserve as much of the estate as possible for the creditors." *In re Das A. Borden Co.*, 131 F.3d at 1464. Consistent with this concern, § 330 focuses on the benefit a professional's services give the estate. Because the lodestar methodology is aimed at uncovering which specific activities benefitted the estate and which activities did not, it is not improper to consider it in awarding a professional a reasonable fee pursuant to § 330.

Having now decided that using a lodestar analysis as one factor among many in determining a reasonable fee under § 330 is not inappropriate, the only other objection to the bankruptcy court's fee award is that it is unreasonable. We review the fee award for an abuse of discretion. *See In Re Hillsborough Holdings Corp.*, 127 F.3d at 1401. The bankruptcy court's refusal to award Miller Buckfire a fee of over $1,000.00 per hour when it found "1) the services originally anticipated were not actually required; 2) the hours expended were slightly excessive; and 3) the resulting hourly rate was also excessive" did not constitute an abuse of discretion.

14

Its findings of fact were not clearly erroneous, it followed proper procedures, and it applied a correct legal standard. Therefore, the bankruptcy court did not abuse its discretion.

We affirm the bankruptcy court's determination of a reasonable fee.

B.    *Rule 2014 Disclosure*

Citation argues that we should rule that the bankruptcy court should have refused to award any fee because Miller Buckfire failed to disclose its past dealings with certain members of Citation's board of directors.

Certain disclosures are required as part of the retention process under the Bankruptcy Rules to ensure that professionals are disinterested and have no significant conflicts of interest. Rule 2014(a) states, "The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants . . . ." Fed. R. Bankr. P. 2014(a).

Plainly, by its terms, Rule 2014 requires a professional to disclose all of its relevant connections in its disclosure so that the bankruptcy court can determine if there are any conflicts or potential conflicts. *See I.G. Petroleum LLC v. Fenasci (In Re West Delta Oil Co., Inc.)*, 432 F.3d 347, 355 (5th Cir. 2005) ("Case law has uniformly held that under rule 2014(a), (1) full disclosure is a continuing

15

responsibility, and (2) [a professional] is under a duty to promptly notify the court if any potential for conflict arises."); *In re Keller Fin. Servs. of Fla., Inc.*, 243 B.R. 806, 812 (Bankr. M.D. Fla. 1999) ("The professional must disclose all facts that bear on his disinterestedness and cannot usurp the court's function by unilaterally choosing which connections impact on his disinterestedness, and which do not."). The bankruptcy court, not the professionals, must determine which prior connections rise to the level of an actual conflict or pose the threat of a potential conflict. Therefore, the professional must disclose all of its previous contacts with any party in interest.

To the extent Miller Buckfire failed to disclose its prior dealings with Kelso & Company, it violated Rule 2014. It is not clear what type of penalty or whether a penalty should be applied to Miller Buckfire at all. Neither Rule 2014 nor the Bankruptcy Code mandates a sanction for the violation of Rule 2014. In such situations, whether to impose a penalty and the nature and extent of the penalty is generally a matter left to the bankruptcy court's discretion.

It is unclear whether the bankruptcy court considered a violation of Rule 2104 when it awarded fees. In its opinion, the bankruptcy court did not explicitly address the violation, only whether Miller Buckfire's prior association with Kelso caused any detriment to Citation's bankruptcy estate. We, therefore, remand this

16

case to the bankruptcy court for further consideration of whether Miller Buckfire violated Rule 2014, and, if so, whether, in the court's discretion, it should penalize Miller Buckfire.

## IV.  CONCLUSION

Based on the above discussion, we conclude that the district court erred by concluding the bankruptcy court improperly considered a reasonable lodestar in calculating Miller Buckfire's fee.  We conclude the bankruptcy court did not abuse its discretion in the amount it awarded Miller Buckfire.  In addition, we reverse the district court's order to the extent the district court found the bankruptcy court had considered whether Miller Buckfire's conduct violated Rule 2014.   We remand for the bankruptcy court to reconsider whether Miller Buckfire violated Rule 2014 and whether, in its discretion, it should penalize Miller Buckfire for the violation.  We also remand for the bankruptcy court to reconsider Miller Buckfire's request for reimbursement of attorney's fees amounting to $110,351.80 with consideration of the detailed itemization the district court noted in its opinion.

**REVERSED and REMANDED.**