In re NORTHWEST AIRLINES
CORPORATION, et al.,
Debtors.

Lazard Freres & Co. LLC, Appellant,

v.

Diana G. Adams, United States Trustee;
Carval Investors, LLC; and Associa-
tion of Flight Attendants—CWA,
AFL–CIO, Appellees.

Official Committee of Unsecured
Creditors of Northwest Airlines
Corporation, Appellant,

v.

Diana G. Adams, United States Trustee;
Carval Investors, LLC; and Associa-
tion of Flight Attendants—CWA,
AFL–CIO, Appellees.

Nos. 05–17930 (ALG), 08 Civ.
3456, 08 Civ. 3500(NRB).

United States District Court,
S.D. New York.

Nov. 10, 2008.

**MEMORANDUM AND ORDER**

NAOMI REICE BUCHWALD, District
Judge.

Appellants Lazard Freres & Co. ("La-
zard"), financial advisor to the Official
Committee of Unsecured Creditors (the
"Committee"), and the Committee appeal
from the February 29, 2008 decision and
order of U.S. Bankruptcy Judge Cecelia G.
Morris denying Lazard's application for a

$3.25 million "completion fee."[1] *In re Northwest Airlines Corp., et al.,* 382 B.R. 632, 652 (Bankr.S.D.N.Y.2008). For the reasons stated herein, this case is remanded to the Bankruptcy Court for further proceedings consistent with this opinion.

## BACKGROUND

Northwest Airlines Corporation and certain affiliates (collectively, the "Debtors") commenced this Chapter 11 proceeding on September 14, 2005. The Committee filed its application to retain Lazard as a financial advisor on November 8, 2005 (the "Retention Application").[2] U.S. Bankruptcy Judge Alan L. Gropper[3] signed an interim order on November 2 9, 2005 (the "Interim Retention Order")[4] and a final order on July 20, 2006 (the "Final Retention Order")[5] authorizing the Committee's retention of Lazard.

The Final Retention Order incorporated by reference the terms of the Retention Application and the Committee's October 6, 2005 engagement letter with Lazard (the "Engagement Letter"). These agreements provided that Lazard would receive a monthly fee of $275,000 and the possibility of a "success or completion fee."[6] This latter fee is described in the Retention Application as follows:

It is agreed that on all matters relating to [Lazard's] entitlement, *if any,* to an additional success or completion fee shall be deferred until the latter part of the [Northwest] chapter 11 case, and that [hazard] shall be required to comply with the applicable notice procedures required by the Court and the [Trustee].[7]

Lazard went on to serve as the Committee's financial advisor for approximately 20 months, from October 6, 2005 to May 31, 2007.[8] Lazard initially proposed a $4 million completion fee to the Committee.[9] The Committee determined that the $4 million completion fee was "reasonable and appropriate" and that "the committee would support it."[10] After arms-length negotiations with the debtors, which would ultimately be responsible for paying the fee,[11] hazard agreed to reduce its request by $750,000 to $3,250,000.[12] Thus, the $3,250,000 figure for the completion fee was supported both by the Committee and by the Debtors.

Lazard submitted a fee application seeking total compensation of $8,873,560.12,

---

1. Such a fee is commonly referred to either as a "completion fee" or a "success fee." We use "completion fee" herein.

2. Electronic Case Filing Docket Number ("ECF Docket No.") 948.

3. The case was initially assigned to Judge Gropper. After the filing, some matters were assigned to Chief Judge Stuart Bernstein. Judge Morris presided over Lazard's application for a success or completion fee.

4. ECF Docket No. 1272.

5. ECF Docket No. 3112.

6. Retention Application ¶ 18(c).

7. *Id.* (emphasis added).

8. Final Application of Lazard Freres & Co., LLC for Allowance of Compensation and for Reimbursement of Expenses for Services Rendered in these cases for the period October 6, 2005 through May 31, 2007 ("Final Compensation App."). ECF Docket No. 7431.

9. Appellants' Joint Brief in Support of Appeals From Decision of the Bankruptcy Court Denying Completion Fee Portion of Final Fee Application ("Appellants' Joint Br.") at 7–8.

10. *Id.* at 8.

11. In any future filing, this obligation would enjoy a section 507(a)(2) priority due to its status as a section 503 administrative expense. 11 U.S.C. §§ 503(b)(2), 507(a)(2).

12. Appellants' Joint Br. at 9.

which was comprised of $5,455,645 representing its monthly fee, $167,915.12 in expenses, and $3,250,000 as a completion fee.[13] Judge Morris granted the fee request with regard to its first two components on November 2, 2007,[14] but held an evidentiary hearing on November 19, 2007 to consider the $3,250,000 completion fee. Judge Morris denied hazard's request for the completion fee on February 29, 2008. *In re Northwest Airlines Corp., et al.,* 382 B.R. at 652.

## THE BANKRUPTCY COURT'S DECISION

Judge Morris's opinion reached two major holdings: first, that Lazard's completion fee was not preapproved under section 328(a) of the Bankruptcy Code,[15] and second, that the completion fee failed to constitute "reasonable compensation" under section 330(a).[16]

Section 328 permits professional persons to obtain preapproval from the bankruptcy court for compensation agreements.[17] Such preapproved compensation is protected in that it will not be modified by the court unless "such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions."[18]

Judge Morris found Lazard's monthly fee of $275,000 to have been preapproved under section 328(a). *In re Northwest Airlines Corp., et al.,* 382 B.R. at 640. But she held that Lazard had only obtained section 328(a) preapproval from the court for a right to *request* a completion fee because "the terms 'success fee' and 'completion fee' are not defined by any of the documents filed with the Court pertaining to Lazard's retention by the Committee" and "the interpretation of these terms was left completely open ended." *Id.* at 637, 640. Lazard neither defined "how much [it] anticipated requesting as a success or completion fee" nor provided "objective guidelines or protocols with which to evaluate their request." *Id.* at 649.

After concluding that the completion fee was not preapproved under section 328(a), Judge Morris went on to evaluate the fee request under section 330(a).[19] Judge

---

13. Final Compensation App. at 1.

14. ECF Docket No. 7749.

15. 11 U.S.C. §§ 101 et seq.

16. 11 U.S.C. § 330(a).

17. Section 328 of the Bankruptcy Code states in pertinent part:

(a) The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions af-

ter the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

18. 11 U.S.C. § 328(a). *See, e.g., F.V. Steel & Wire Co. v. Houlihan Lokey Howard & Zukin Capital, L.P.,* 350 B.R. 835, 838–39 (E.D.Wis. 2006).

19. Section 330 of the Bankruptcy Code states in pertinent part:

(a) (1) . . . the court may award to . . . a professional person employed under section 327 or 1103—
(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and

Morris rejected an argument that, under a "market-driven" approach, Lazard is entitled to a completion fee solely because payment of such a fee to financial advisors is "customary" in large chapter 11 bankruptcy cases. *Id.* at 646, 649. Judge Morris distinguished cases offered in support of this proposition on the grounds that some involved section 328(a), rather than section 330(a), determinations and others involved applications with objective guidelines that were preapproved under section 328(a). *Id.* at 647–51.

Judge Morris proceeded to evaluate the completion fee under the "lodestar" methodology, which has been developed in the context of attorney's fees. *See, e.g., Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). As Judge Morris explained, "the 'lodestar' approach involves multiplying the reasonable billing rate by the reasonable number of hours expended." *Id.* at 645 (citing *Blum,* 465 U.S. 886 at 898–901, 104 S.Ct. 1541, 79 L.Ed.2d 891). "The customary way to determine a reasonable fee is to begin with the 'lodestar' test, and then decide whether to apply any appropriate enhancements ..." *Id.* (quoting *In re Erik Stephen Brous,* 370 B.R. 563 (Bankr.S.D.N.Y.2007)). Lastly, "[e]nhancements to the 'lodestar' amount are proper only in rare and exceptional cases supported by specific evidence and detailed findings." *Id.* (quoting *Brous,* 370 B.R. at 570).

Judge Morris did not expressly state that she found Lazard's compensation, inclusive of the completion fee, to exceed the product of a reasonable billing rate and a reasonable number of hours expended. Rather she implicitly reached that conclusion in conducting the subsidiary analysis of whether Lazard is entitled to an "enhancement" to the lodestar figure. *Id.* at 643. Judge Morris concluded by finding that the success achieved by Lazard in this case did not merit such an enhancement and that the completion fee request should therefore be denied. *Id.* at 651.

### ARGUMENTS ON APPEAL

On appeal, Lazard has abandoned its argument that the completion fee it requested was preapproved under section 328(a) and instead argues solely that the "Bankruptcy Court erred in holding that the completion fee requested by Lazard was not reasonable under section 330." [20]

Lazard contends, *inter alia,* that the Bankruptcy Court "erred in asserting that the 'lodestar' test applies to Lazard's re-

---

(B) reimbursement for actual, necessary expenses.

(2) The court may ... award compensation that is less than the amount of compensation that is requested.

(3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

**20.** Appellants' Joint Br. at 1.

quest for a completion fee."[21] According to Lazard, the lodestar methodology "is not appropriate in evaluating financial advisory fees because, unlike attorneys who charge an hourly rate for legal services, financial advisors like Lazard customarily charge a fixed monthly advisory fee and a completion fee."[22] Lazard cites to *In re EWI, Inc.*, 208 B.R. 885, 891 (Bankr. N.D.Ohio 1997), for the proposition that lodestar is inapplicable in part because financial advisors do not keep itemized time records.[23]

To rebut Lazard's argument, appellee U.S. Trustee cites cases from the Tenth and Eleventh Circuits that hold that the bankruptcy court may consider the lodestar methodology in determining whether the compensation of financial advisors is "reasonable" under section 330(a).[24] *In re Commercial Financial Services, Inc.*, 427 F.3d 804, 811 (10th Cir.2005) ("Nor is [financial advisor Houlihan Lokey's] mantra of the [sic] 'the marketplace' sufficient to preclude a bankruptcy court from using a constructive hourly rate[25] to compare divergent fees in multiple unrelated proceedings."); *In re Citation Corp.*, 493 F.3d 1313, 1321 (11th Cir.2007) ("it is not improper to consider the [the lodestar methodology] in awarding a professional a reasonable fee pursuant to § 330.").

## ANALYSIS

As a preliminary matter, a bankruptcy court's conclusions of law are subject to *de novo* review on appeal. *In re*

*Manville Forest Products Corp.*, 209 F.3d 125, 128 (2d Cir.2000); *In re Calpine Corp.*, 365 B.R. 401, 407 (S.D.N.Y.2007).

As is often the case, the presentation of a case on appeal is quite different from its presentation below. Below the thrust of the argument was Lazard's entitlement to a completion fee under section 328(a). On appeal, Lazard has abandoned its argument of entitlement through preapproval under section 328(a) and argues solely that its fee is "reasonable" under section 330(a). No doubt the presentation of the case below influenced the opinion that followed, which included an extended discussion distinguishing other fee cases on the grounds that the completion fees were preapproved in those cases. The other consequence of this change in emphasis is that it leaves us less than certain as to the basis of the opinion below and whether a comprehensive analysis was conducted under section 330(a).

The section of Judge Morris's opinion that applies section 330(a) contains two discussion subsections. The first is entitled "Discussion of Bankruptcy Code Section 330(a) and 'lodestar'". To the extent that this discussion is understood as concluding that Lazard was not entitled to the additional compensation because its performance was not "exceptional" and therefore a lodestar enhancement was not appropriate,[26] we depart from that analysis for two basic reasons. First, because the discussion emphasizes the need to estab-

21. *Id.* at 21.

22. *Id.*

23. *Id.* at 22.

24. Brief of Appellee United States Trustee ("U.S. Trustee Brief") at 21–22.

25. In this case, Lazard's hourly rate of compensation comes out to $876 per hour without the completion fee and $1,398 per hour with

the full completion fee requested. *Id.* at 8 n. 8.

26. The opinion expressly states that "the Court considers both Lazard's and [a separate party's] requests for a success or completion fee to be requests for fee enhancements." *In re Northwest Airlines Corp., et al.*, 382 B.R. at 643.

lish "exceptional" success, it does not directly address the controlling question: whether the total amount sought is "reasonable" under section 330(a). Second, to the extent that the lodestar analysis sets a higher bar for Lazard's performance than section 330(a) reasonableness, it departs from the statutory language.[27]

The second discussion subsection is entitled "Discussion of 'market-approach' to fee determination". As noted earlier the thrust of this discussion is directed to distinguishing other fee cases on the ground that the fees were approved in advance or that retention orders contained criteria for later determination. We have no disagreement with that analysis. However, our concern is that the analysis did not go further. While we can certainly appreciate the policy argument that standards in initial retention orders provide objective guidelines for later determinations (and may even properly align incentives), we can also appreciate the argument advanced by Lazard that there are advantages to deferring determination of a completion fee until after a full review of creditor recoveries and a professional's performance is possible. It is not clear that the Court, after distinguishing the other cases, addressed the paramount issue of whether a completion fee even though not preapproved under section 328(a) was nonetheless "reasonable" under section 330(a) in light of all the statutory factors.

Accordingly, we remand the application of Lazard to the Bankruptcy Court for further proceedings consistent with this opinion. We, of course, express no views on the ultimate question of the amount of fees to which Lazard may be entitled.

**SO ORDERED.**

---

**27.** While we do not need to reach the question of whether use of the lodestar methodology is always inappropriate in the context of financial advisor compensation under section 330, we note that Lazard cites but a single case in support of this proposition, *In re EWI, Inc.*, 208 B.R. at 885. Moreover, the argument that lodestar analysis should not be applied to financial advisor compensation because financial analysts do not keep itemized time records falls flat in cases such as the one before us, in which the court orders the financial advisor to keep contemporaneous time records. Interim Retention Order ¶ 6.