[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10687

Non-Argument Calendar

_____

In re: Fundamental Long Term Care, Inc.,

Debtor.

_____

ESTATE OF ARLENE TOWNSEND,
ESTATE OF ELVIRA NUNZIATA,
ESTATE OF JAMES HENRY JONES,
ESTATE OF JOSEPH WEBB,
ESTATE OF OPAL LEE SASSER,
ESTATE OF JUANITA JACKSON,
Petitioning Creditor,

Plaintiffs-Appellants,

*versus*

STEVEN M. BERMAN, Esq.,

SHUMAKER, LOOP & KENDRICK, LLP,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cv-00558-SDM,
Bkcy No. 8:11-bk-22258-MGW

_____

_____

No. 22-10689

Non-Argument Calendar

_____

In re: Fundamental Long Term Care, Inc.,

Debtor.

_____

ESTATE OF ARLENE TOWNSEND,

ESTATE OF ELVIRA NUNZIATA,

ESTATE OF JAMES HENRY JONES,

ESTATE OF JOSEPH WEBB,

22-10687            Opinion of the Court                    3

ESTATE OF OPAL LEE SASSER ,
ESTATE OF JUANITA JACKSON,
Petitioning Creditor,

                                    Plaintiffs-Appellants,

*versus*

ROBERT ELGIDELY,
FOX ROTHSCHILD LLP,
GENOVESE JOBLOVE & BATTISTA, P.A.,

                                    Defendants-Appellees.

—————————————

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cv-00762-SDM,
Bkcy No. 8:11-bk-22258-MGW

—————————————

Before WILSON, NEWSOM, and TJOFLAT, Circuit Judges.

PER CURIAM:

This bankruptcy case has a long and convoluted history, which we recently detailed in a 2021 appeal by the Appellant Probate Estates. *See In re Fundamental Long Term Care, Inc.*, 81 F.4th 1264 (11th Cir. 2023), *cert. denied sub nom. Est. of Arlene Townsend v. Berman*, 144 S.Ct. 1098 (2024). There, we affirmed the

District Court's decision affirming the Bankruptcy Court's decision denying the Probate Estates' motion to disqualify Appellee Shumaker, Loop & Kendrick as the Chapter 7 Trustee's special litigation counsel and to require that Shumaker disgorge the $5.62 million attorney's fee that the Bankruptcy Court awarded the firm for its work in representing the Trustee.

In the two consolidated appeals before us now, the Probate Estates ask us to reverse the District Court's decisions affirming the Bankruptcy Court's awards of attorney's fees to Shumaker and fellow Appellees Fox Rothschild LLP and Genovese, Joblove & Battista for services performed in *Fundamental Long Term Care*.

In one of the appeals before us, No. 22-10687, the Probate Estates argue that the District Court erred in affirming the Bankruptcy Court's order granting the Chapter 7 Trustee's motion to award Shumaker $750,000 for representing the Chapter 7 Trustee in an adversary proceeding because an earlier order of the Bankruptcy Court precluded Shumaker from being compensated from funds held by the Bankruptcy Estate. The Probate Estates argued alternatively that the Bankruptcy Court violated a local rule of the Bankruptcy Court by choosing not to hold a hearing or wait twenty-one days after the Chapter 7 Trustee filed her motion before granting it. The District Court found no merit in either argument. And neither do we for the reasons that follow.

In the other appeal, No. 22-10689, the Probate Estates argue that the District Court erred in affirming the Bankruptcy Court's decision awarding fees to Fox Rothschild and Genovese because

(1) the Court chose not to wait twenty-one days after the Chapter 7 Trustee moved the Court to entertain it and (2) the Court failed to hold a hearing on the motion as required by the Bankruptcy Code. The District Court rejected these arguments as meritless and we do so as well.

## I. Background

The instant case is one chapter in an ongoing bankruptcy litigation that spans over a decade. *See Fundamental Long Term Care*, 81 F.4th 1264. We, therefore, will summarize the background of this case only briefly in Section A before detailing the events relevant to the disputes before us now in Section B.

### *A.*

Between 2004 and 2009, the estates of Arlene Townsend, Elvira Nunziata, James Henry Jones, Joseph Webb, Opal Lee Sasser, and Juanita Jackson (collectively, the Probate Estates) filed wrongful death suits against Trans Healthcare, Inc. (THI) and Trans Healthcare Management, Inc. (THMI)—nursing management companies that operate the nursing homes that the decedents lived in. The Probate Estates allege that in March 2006—while some of the wrongful death suits were pending—THI "busted out" THMI's assets and created Fundamental Long Term Care, Inc. (Fundamental) as a shell company to acquire THMI's liabilities.[1]

---

[1] For a more detailed description of THI's alleged "bust-out" scheme, see Section II.B. of *In re Fundamental Long Term Care, Inc.*, 81 F.4th 1264, 1284–95 (11th Cir. 2023), *cert. denied sub nom. Est. of Arlene Townsend v. Berman*, 144 S.Ct. 1098 (2024).

*Id.* at 1286.  On July 22, 2010, the Circuit Court of Polk County entered judgment in favor of the Jackson Estate against THI and THMI and found them each liable for $55 million, for a combined $110 million judgment.[2]  *Id.* at 1269.  After THI and THMI failed to pay amounts owed under these judgments, on December 5, 2011, the Jackson Estate filed an involuntary Chapter 7 bankruptcy petition against Fundamental.  *Id.* at 1276.

The United States Bankruptcy Court for the Middle District of Florida appointed Beth Ann Scharrer as Chapter 7 Trustee (the Trustee) on January 23, 2012.  *Id.* at 1271.  On June 1, 2012, the Trustee filed an application seeking to employ Shumaker, Loop & Kendrick (Shumaker) as special counsel to assist in litigation matters, and the Bankruptcy Court granted the Trustee's motion four days later.  *Id.* at 1281.

The Trustee brought adversary proceedings against several entities on behalf of the Bankruptcy Estate—including Troutman Sanders, LLP (Troutman), a law firm that helped THI develop and execute its "bust-out" scheme.  *Id.* at 1279.  The trial took place before the Bankruptcy Court from September 22 to October 7, 2014.  *Id.* at 1299.  On December 16, 2014, the Bankruptcy Court announced its tentative findings of fact and conclusions of law and directed the parties to resolve their disputes in mediation.  *Id.*

---

[2] The Probate Estates won over $1 billion in total judgments against THI and THMI.  *Id.* at 1288.

*B.*

### 1. Shumaker's Fee

At the close of mediation, the Trustee recovered $23.7 million for the Bankruptcy Estate,[3] but that figure failed to satisfy the litigation's accumulated and anticipated cost. *Id.* at 1302, 1308. On September 9, 2015, the Trustee and the Probate Estates moved the Bankruptcy Court to approve a compromise between the Trustee's professionals and the Probate Estates to solve the "allocation problem" of paying for administrative expenses and distributing settlement funds. *Id.* at 1301. The compromise included a "Settlement Term Sheet," under which the Trustee and the Probate Estates agreed to assign the Bankruptcy Estate's claims against Troutman Sanders to a "Litigation Trust." *Id.* at 1302. The Settlement Term Sheet provides that the Trustee would also serve as trustee of the Litigation Trust and that proceeds of the Litigation Trust's assets would be used, in part, to pay Shumaker $750,000 for fees[4] due

---

[3] In this opinion, "Bankruptcy Estate" refers to the Estate created by the Chapter 7 petition. Fundamental is the debtor, the Probate Estates are the creditors, and Scharrer is the Trustee.

[4] The Settlement Term Sheet sets out the payment order as follows:

> Proceeds of litigation trust assets shall be used first to pay litigation costs of the litigation trust, then a fee to the trustee equal to the amount of the statutory commission under the Bankruptcy Code calculated on any such proceeds, fees to general counsel for the litigation trust incurred in that capacity, $750,000.00 to [Shumaker] for the balance of any fees payable from the [B]ankruptcy [E]state . . . $77,512.50 to Beth Ann Scharrer for the deferred amount of statutory commission not

from the Bankruptcy Estate. *Id.* The Settlement Term Sheet also requires the Probate Estates to pay the $750,000 to Shumaker if the Probate Estates "recover from any source attributable to non-[B]ankruptcy [E]state claims against Troutman Sanders." *In re Fundamental Long Term Care, Inc.*, No. 8:11-bk-22258-MGW, 2022 WL 710320, at *2 (M.D. Fla. Jan. 31, 2022).

On October 28, 2015, the Bankruptcy Court issued an order approving the Settlement Term Sheet. *Id.* The Bankruptcy Court order allowed Shumaker to immediately assert a $5.62 million claim against the Bankruptcy Estate and allowed "an additional $750,000 to [Shumaker] for the balance of any fees payable from the [B]ankruptcy [E]state."[5] *Id.* The order also authorized the creation of the Litigation Trust and provided that the Chapter 7 Trustee would serve as the trustee of the Litigation Trust but had to conclude her role as Chapter 7 Trustee beforehand. *Id.* The Trustee and the Probate Estates were directed to jointly "file any proposed trust agreement," and the Bankruptcy Court retained authority to approve any trust agreement and resolve any disputes about the trust agreement's form. *Id.*

---

paid pursuant to Paragraph 5 [which sets out the amount various parties must be paid by the end of the year] . . . and for distribution to the Probate Estates.

[5] The order deferred the payment of the $750,000 "in accordance with the Settlement Term Sheet." *In re Fundamental Long Term Care, Inc.*, No. 8:11-bk-22258-MGW, 2022 WL 710320, at *2 (M.D. Fla. Jan. 31, 2022).

The Trustee and the Probate Estates each proposed alternative liquidation-trust agreements—neither of which defined the effective date of the trust. *Id.* On March 30, 2016, the Bankruptcy Court approved the trust agreement form proposed by the Probate Estates, but subsequently refused to implement the agreement because it would violate the terms of the Litigation Trust to have the Trustee serve as Chapter 7 Trustee and Litigation Trust trustee simultaneously. *Id.*

### 2. Genovese & Fox Rothschild's Fees

On January 11, 2016, the Trustee moved to retain Robert Elgidely of Genovese, Joblove & Battista, P.A. (Genovese) as special counsel for her litigation against Troutman. *Id.* "The motion propose[d] a contingency fee [arrangement], under which Genovese would collect 20% of any money recovered from Troutman Sanders before litigation and 40% of any money recovered from Troutman after litigation began." *Id.* If Genovese represented the Trustee in an appeal challenging any recovery, Genovese's total contingency fee would increase by 5%. *Id.* Under the terms of the motion, the Bankruptcy Estate would be responsible for paying all necessary and reasonable costs incurred during the litigation, which Genovese could advance on behalf of the Bankruptcy Estate. *Id.* The Probate Estates objected to the motion two days later, arguing that the Bankruptcy Court should "award Genovese a 'reasonable compensation' under 11 U.S.C. § 330(a)(1)(A) rather than pre-approve a contingency fee under 11 U.S.C. § 328(a)." *Id.* On

February 9, 2016, the Bankruptcy Court granted the Trustee's motion and pre-approved the contingency fee. *Id.*

On December 16, 2016, the Trustee moved the Bankruptcy Court for approval of a settlement between Trustee and Troutman, under which Troutman agreed to pay the Bankruptcy Estate $6.53 million. *Id.* at *3. The Probate Estates subsequently objected to the Trustee's motion, but the Bankruptcy Court approved the settlement over the Probate Estates' objection on May 17, 2017. *Id.* The Probate Estates appealed, triggering the 5% increase in the contingency fee.[6] *Id.*

On October 23, 2019—while the second appeal was pending—Elgidely left Genovese. *Id.* Five days later, Elgidely started working at Fox Rothschild, LLP. *Id.* On November 27, 2019, the Trustee moved to transition appellate representation to Fox Rothschild and proposed allocating the pre-approved contingency fee between Genovese and Fox Rothschild. *Id.* The Bankruptcy Court granted the Trustee's motion on April 3, 2020.[7] *Id.*

---

[6] On June 28, 2017, the Probate Estates appealed and, on May 30, 2019, prevailed on their argument that they had standing to object to the settlement. On August 21, 2019, the Estates appealed again and the District Court affirmed the Bankruptcy Court's approval of the Troutman settlement on September, 30, 2020.

[7] Two weeks later, the Probate Estates appealed the Bankruptcy Court's order to the District Court. On September 21, 2020, the District Court dismissed the Probate Estates' appeal for lack of appellate jurisdiction.

The Troutman settlement became final on January 20, 2021, and on February 19, 2021, Troutman paid the Bankruptcy Estate $6.53 million. *Id.* After Troutman made the payment, the firms—Shumaker, Genovese, and Fox Rothschild—requested payment from the Bankruptcy Estate. *Id.* Shumaker requested the $750,000 deferred fee as set out in the Settlement Term Sheet. *Id.* Genovese and Fox Rothschild requested a $2.93 million aggregate contingency fee—which constituted 45% of the $6.53 million settlement—with $2.19 million to be allocated to Genovese and $731,250 to be allocated to Fox Rothschild. *Id.* Genovese requested reimbursement of prepaid costs totaling $42,676, and Fox Rothschild requested reimbursement of prepaid costs totaling $2,764. *Id.*

Without holding a hearing, the Bankruptcy Court approved the payment to Shumaker on February 23, 2021, and to Genovese and Fox Rothschild on March 3, 2021. *Id.* The Probate Estates appealed both of the Bankruptcy Court's orders to the District Court.[8] *Id.* On March 30, 2021, the Bankruptcy Court issued "Findings of Fact and Conclusions of Law" supporting payment to Genovese and Fox Rothschild. *Id.* On January 31, 2022, the District Court affirmed the Bankruptcy Court orders authorizing payment to Shumaker, Genovese, and Fox Rothschild. *Id.* at *6.

---

[8] The Probate Estates appealed the Bankruptcy Court's order authorizing payment to Shumaker on March 8, 2021. *Id.* The Probate Estates appealed the Bankruptcy Court's orders authorizing payment to Genovese and Fox Rothschild on March 17, 2021. *Id.*

## II.  Legal Standards

In bankruptcy cases, this Court serves as a "second court of review" and examines the bankruptcy court's factual and legal determinations independently.  *In re Optical Techs., Inc.*, 425 F.3d 1294, 1299–1300 (11th Cir. 2005).  We typically review legal conclusions from the bankruptcy court or district court *de novo*, and we review the bankruptcy court's factual findings for clear error.  *Id.* at 1300.  We review a bankruptcy court's decision on whether to allow professional fees and expenses, however, for abuse of discretion.  *In re Citation Corp.*, 493 F.3d 1313, 1317 (11th Cir. 2007).  If the bankruptcy court "applied an incorrect legal standard, failed to follow proper procedures, or made factual findings that were clearly erroneous" in its decision to allow or deny professional fees, this Court should reverse the bankruptcy court's decision as an abuse of discretion.  *Id.* at 1318.

## III.  Discussion

The Probate Estates raise two basic points on appeal.  First, the Estates argue that the District Court erred in affirming the Bankruptcy Court's order approving the Trustee's application to employ Elgidely and Fox Rothschild because they were not disinterested parties as required by 11 U.S.C. § 327(a).  Second, the Estates argue that the District Court erred in affirming the Bankruptcy Court's orders authorizing payments to Shumaker, Genovese, and Fox Rothschild.

As to the first argument, when the Probate Estates appealed the Bankruptcy Court's orders authorizing payment to Shumaker,

22-10687               Opinion of the Court                    13

Genovese, and Fox Rothschild to the District Court, they did not raise the issue of whether Elgidely and Fox Rothschild were disinterested parties.[9]  This Court lacks jurisdiction over issues that a party first raises on appeal. *See CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1336 (11th Cir. 2017).  If an appellant wants this Court to consider an issue, the party must preserve it for appeal by clearly presenting it to the court below.  *Id.* at 1336–37.  In their District Court appeal, the Probate Estates did not preserve the issue of whether Elgidely and Fox Rothschild were disinterested—and whether the Bankruptcy Court's order approving the Trustee's application to employ them should therefore be vacated—so we have no jurisdiction to consider the issue now.[10]

Next, the Probate Estates argue that the Bankruptcy Court abused its discretion in issuing the orders authorizing payment to Shumaker, Genovese, and Fox Rothschild—and the District Court erred by affirming these orders.

---

[9] Because the District Court concluded that the order approving the Trustee's application to employ Elgidely and Fox Rothschild disposed of an "incidental procedural matter" and thus was not a final order, the Probate Estates could have appealed the order when the Bankruptcy Court issued its final order on March 3, 2021 that incorporated the interlocutory order.  *See* Fed. R. App. P. 3 advisory committee's note to 2021 amendment ("Designation of the final judgment confers appellate jurisdiction over prior interlocutory orders that merge into the final judgment. . . .  [A] party cannot appeal from most interlocutory orders, but must await final judgment, and only then obtain review of interlocutory orders on appeal from the final judgment.").

[10] We also do not address arguments raised for the first time in a reply brief. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 683 (11th Cir. 2014).

The Bankruptcy Court abused its discretion, the Estates argue, because (1) the Court declined to hold a hearing before issuing the orders, and (2) the Court issued the orders before the end of the 21-day "negative notice" period set out in the Bankruptcy Court's Local Rule 2002-4.  We find no abuse of discretion.

First off, the Probate Estates maintain that 11 U.S.C. § 330(a)(1) governs here and requires a hearing.[11]  The firms contend that, as the District Court found, Section 330 does not apply, but rather 11 U.S.C. § 328(a) governs and does not require a hearing.[12]  We agree that Section 328 applies because the Bankruptcy

---

[11] 11 U.S.C. § 330(a)(1) states:

> After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103--
>> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
>> (B) reimbursement for actual, necessary expenses.

[12] 11 U.S.C. § 328(a) states:

> The trustee, . . . with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.  Notwithstanding such terms and

Court has already approved the terms and conditions of the Trustee employing Shumaker for a fixed fee and Fox Rothschild and Genovese for a contingent fee. *See* 11 U.S.C. § 328(a). The Court approved, after notice and a hearing, the fixed $750,000 fee to Shumaker at the time it approved the Settlement Term Sheet in October 2015. In addition, the Bankruptcy Court pre-approved, after notice and a hearing, the contingency fee in January 2016. This contingency fee was affirmed, after notice and a hearing, in October 2019, as well. When the Bankruptcy Court was set to review the orders under review in this case authorizing payment, the Court had enough knowledge of the facts and prior legal disputes in the docket before it to resolve the issue, so the Court did not abuse its discretion by not holding hearings.[13]

Next, Local Rule 2002-4 sets out a "Negative Notice Procedure" by which the Bankruptcy Court may review a motion, objection, or other papers from an established list, called the "Negative Notice List." If a party files a motion on the list and invokes

---

conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

[13] As the District Court also noted, the Bankruptcy Code does not require bankruptcy courts to hold hearings on every motion—it only requires that parties have the "opportunity for a hearing *as is appropriate in the particular circumstances.*" 11 U.S.C. § 102(1)(A) (emphasis added); *Fundamental Long Term Care*, 2022 WL 710320, at *4.

Local Rule 2002-4 by prominently displaying a negative notice legend on the face of the first page of paper, the non-moving party has twenty-one days to respond, unless there is a different timeline for that type of paper set forth on the Negative Notice List. Here, none of the firms invoked Local Rule 2002-4 in their motions to authorize payment, so the Bankruptcy Court did not abuse its discretion by failing to provide a 21-day negative notice period.

The Probate Estates also argue that the Bankruptcy Court abused its discretion in issuing its orders authorizing payment to Genovese and Fox Rothschild because Elgidely failed to discuss what would constitute a "reasonable compensation" with the Probate Estates as he promised the Court he would be willing to do. We fail to understand how such a failure could constitute an abuse of discretion by the Bankruptcy Court and therefore reject the argument.

Finally, the Probate Estates argue that the Bankruptcy Court abused its discretion in authorizing payment to Shumaker because the terms of the Settlement Term Sheet precluded the authorization. The Settlement Term Sheet provides that Shumaker's payment will be deferred in accordance with the Term Sheet's other provisions. The Estates argue that because the Litigation Trust set out in the Term Sheet was never created, Shumaker's claim to payment must be deferred in perpetuity.

But, as the District Court correctly noted, nothing in the Settlement Term Sheet indicates that Shumaker's claim could be paid only from the Litigation Trust. Indeed, the Term Sheet requires

the Estates to pay Shumaker's claim if the Estates "recover from any source attributable to non-[B]ankruptcy [E]state claims against Troutman Sanders"—not just from the Litigation Trust. The Bankruptcy Court thus did not abuse its discretion in approving Shumaker's motion for payment.

## IV. Conclusion

Because the Bankruptcy Court did not abuse its discretion in issuing any of the payment orders and the Probate Estates forfeited the issue of whether Elgidely and Fox Rothschild are disinterested parties under 11 U.S.C. § 327(a), the District Court's judgments are accordingly

**AFFIRMED.**